[No. D002454. Fourth Dist., Div. One. Aug. 7, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
LEO SIMON, Defendant and Appellant.

126

COUNSEL

Michael J. Imhoff, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, John W. Carney and Holly D. Wilkens, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

WIENER, J.—Defendant Leo Simon appeals after a jury found him guilty of second degree murder (Pen. Code, §§ 187, 189)[1] and found that he used a firearm in the commission of the murder (§ 12022.5). The issue in this case involves the admissibility of a prior assault committed by Simon directed against a person other than the victim. While potentially admissible to negate Simon's claim of self-defense, we have determined that the procedures surrounding the court's determination of its admissibility and the limiting instructions given to the jury were insufficient. Accordingly, we reverse.

FACTUAL AND PROCEDURAL BACKGROUND

In the early morning hours of March 10, 1984, Simon shot and killed Phillip Soto at Petrea Saunders' apartment. He dragged Soto's body downstairs and placed it near the apartment building's trash dumpster. He also placed Soto's pistol and certain other belongings nearby. Shortly thereafter, he phoned the police and reported the shooting. Simon then obtained an attorney and surrendered himself to police.

Simon was charged with murder. At trial, Simon conceded shooting Soto but argued the killing was excusable because he shot Soto in self-defense.

Saunders had been Simon's girlfriend for nearly three years. Several hours before the shooting, Saunders met Soto, a casual acquaintance, at a bar and invited him to her apartment. Soto was having car trouble and had no place to spend the night. When they arrived, Saunders began fixing some breakfast for Soto while he sat on a couch reading a magazine. At some point, Saunders observed Soto with a pistol on his lap which he covered with the magazine.

After closing the bar he owned and operated, Simon arrived at Saunders' apartment approximately 20 minutes after Saunders and Soto. It is at this

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

point that the various witnesses' versions of the morning's events begin to diverge. Trudy Burgess, Saunders' next door neighbor testified that she was awakened shortly before 4 a.m. by the sounds of an argument coming from Saunders' apartment. Burgess recognized the voices of Simon and Saunders. She then heard a gunshot followed by Saunders' crying. Saunders then yelled something like, "God damn it, Bill."

Simon testified that Saunders removed a chain lock and admitted him to the apartment when he arrived. As he entered the apartment he noticed Soto sitting on the couch. As Simon listened to something Saunders was saying, he turned and saw Soto point a pistol at him. He immediately drew his own gun from a holster and fired in self-defense.

Saunders gave several separate interviews to the police and testified at both the preliminary hearing and at trial. Her descriptions of the events varied significantly. Her testimony at trial largely corroborated Simon's. She stated that when she saw Soto draw his gun and point it at Simon, she screamed, "Oh, Phil." Simon responded by drawing his own gun and firing at Soto. In her earlier statements, Saunders indicated that Simon was angry at finding Soto in the apartment and an argument ensued. She became disgusted and walked away. She then heard a gunshot and turned to see Simon standing over Soto with a gun in his hand.

In support of Simon's self-defense theory, several witnesses testified as to Soto's known drug usage and his propensity for aggressive behavior. Two witnesses testified as to a confrontation in a bar between Soto and one of the witnesses in which Soto pulled a gun on the victim, placed it to his head, and "flicked" the hammer.

In support of its theory of the case and over defense objection,[2] the prosecution introduced evidence of a prior incident involving Simon and Peter Ashton. Ashton was at Saunders' apartment early one evening when Simon arrived. Simon became angry at finding Ashton there and pulled a gun on him. According to Simon's and Saunders' trial testimony, Ashton was selling drugs to Saunders when Simon arrived. Simon had been attempting to help Saunders with her drug problem and was enraged by those "friends" who continued supplying her. Ashton claimed he was at Saunders'

---

[2]Simon argued at trial that evidence of the Ashton incident was irrelevant and inadmissible or, if marginally relevant, its prejudicial effect clearly exceeded its probative value. The trial court tentatively ruled that the evidence would not be admissible as part of the prosecutor's case-in-chief but could come in on rebuttal if Simon asserted a self-defense theory. At that point, without waiving his initial objection, defense counsel conferred with Simon and then indicated that if the evidence was to come in at all, he would prefer that it be included in the direct testimony of the prosecution's witnesses.

apartment to collect on a $40 loan. He denied any drugs were involved but provided few details on why Simon became angry other than that he wanted to know why Ashton was there. Saunders was impeached by her prior statements to police indicating that Simon had accused her and Ashton of having a sexual relationship. She attributed Simon's anger and his pulling the gun on Ashton to this accusation.

DISCUSSION

I

This case is another in a long series in which a defendant challenges the admission of a prior criminal act committed by him and the People seek to justify its admission by demonstrating that the prior act is relevant to prove something other than the defendant's general propensity to commit crimes. (See generally *People* v. *Harvey* (1984) 163 Cal.App.3d 90, 100 [208 Cal.Rptr. 910].) Simon's challenge here involves the admissibility of evidence of the prior incident in Saunders' apartment involving Peter Ashton. Simon claims the Ashton incident was relevant only to prove his disposition to assault people with a handgun, which is a purpose specifically prohibited by Evidence Code section 1101, subdivision (a). The People respond that the evidence was relevant on the issues of Simon's intent and motive for the murder and, more particularly, to rebut Simon's claim of self-defense. (See *ante,* fn. 2.)

**(1)** It is well settled that evidence of a defendant's uncharged acts is not admissible to show he had the criminal disposition or propensity to commit the crime charged. (Evid. Code, § 1101, subd. (a).) To fall within the exceptions created by subdivision (b), the "other acts" evidence must have a tendency to prove or disprove a disputed material fact and not merely be cumulative. The trial court must also determine that its probative value outweighs its prejudicial effect. (*People* v. *Alcala* (1984) 36 Cal.3d 604, 631-632 [205 Cal.Rptr. 775, 685 P.2d 1126].) Of particular relevance to this case, subdivision (b) has been interpreted to allow the admission of "other act" evidence which tends to negate a defendant's claim of self-defense. (*People* v. *Wells* (1949) 33 Cal.2d 330, 341-342 [202 P.2d 53]; *People* v. *Sam* (1969) 71 Cal.2d 194, 206 [77 Cal.Rptr. 804, 454 P.2d 700].) In *Wells,* for instance, a defendant's prior malicious assault on a prison guard was admitted to negate his claim of self-defense with respect to the charged offense, also an assault on a prison guard.

Ordinarily, determining the relevance of proffered "other act" evidence presents solely a question of law for the court because the defendant does not dispute the fact of the prior act but merely argues its legal inadmissibility.

(See, e.g., *People* v. *Alcala, supra,* 36 Cal.3d at pp. 629-630; *People* v. *Harvey, supra,* 163 Cal.App.3d at p. 99.) Occasionally, a defendant will claim he did not commit the other uncharged act(s), in which case a question of fact will be presented which must be resolved by the jury before it can draw any inference regarding defendant's commission of the charged offense.[3] (See, e.g., *People* v. *Wade* (1959) 53 Cal.2d 322, 330 [1 Cal.Rptr. 683, 348 P.2d 116]; *People* v. *Donnell* (1975) 52 Cal.App.3d 762, 777 [125 Cal.Rptr. 310].) Here, however, we deal with neither of these two typical situations. Simon admits the fact of the earlier assault on Ashton but contends his state of mind or motive for the assault makes the prior incident irrelevant. He asserts his assault on Ashton was motivated by his desire to keep Saunders away from drug dealers. He testified at trial that drugs were in Saunders' apartment when he encountered Ashton on the couch. Saunders' trial testimony corroborates Simon but her earlier statements to police indicate the assault was motivated by Simon's jealousy at finding another man in his girlfriend's apartment. Ashton's testimony reveals no clear motive for the assault. He specifically denied, however, that there were any drugs present. While there is no dispute Simon pointed a gun at Ashton, the objective circumstances surrounding the assault—which give rise to inferences concerning Simon's motivation or reasons for the assault—are hotly contested.

There was no evidence in the present case that Soto was selling drugs to Saunders. If one accepts Simon's testimony that the assault on Ashton was motivated by his desire to keep Saunders away from drug dealers, the Ashton incident is not relevant to prove any disputed factual issue in Soto's killing. If, however, the assault on Ashton was motivated by jealousy, the two incidents are sufficiently similar to suggest that Simon was the aggressor thereby negating his self-defense claim.[4] Thus, Simon's motive in assaulting

[3]In such cases it is generally unnecessary to instruct the jurors that if they believe the defendant, the prior act evidence should be disregarded; clearly if the defendant cannot be connected to the prior act, admission of evidence concerning it will not normally prejudice him. (Cf. *People* v. *Harris* (1977) 71 Cal.App.3d 959, 965-966 [139 Cal.Rptr. 778].) The situation is markedly different where, as here, the defendant admits the prior act but disputes the *manner* in which it occurred. In such a situation, the danger of prejudice in the absence of a clarifying instruction is significant. Here, for instance, the jury collectively or jurors individually may have believed Simon's version of the Ashton incident but nonetheless considered the evidence for the purpose of showing Simon's intent to commit assaults with handguns.

[4]To the extent the People are arguing that the Ashton incident is independently admissible to prove Simon's motive and intent in killing Soto, we reject the contention. The trial court was correct in ruling that evidence of the Ashton incident was admissible, if at all, only to rebut Simon's claim of self-defense. The mere pointing of a gun at Ashton, whatever the circumstances surrounding it, had no tendency to prove that Simon *intended to kill* Soto. And nothing in Simon's conduct toward Ashton suggests a motive for killing Soto. (Cf. *People* v. *Durham* (1969) 70 Cal.2d 171, 187-189 [74 Cal.Rptr. 262, 449 P.2d 198] (evidence of prior crimes admissible to show that defendant's motive in shooting a police officer was to avoid apprehension); *People* v. *Gonzales* (1948) 87 Cal.App.2d 867, 877-878 [198 P.2d 81] (evidence of prior rape admissible to demonstrate defendant's motive in killing person who knew of the rape).)

Ashton is a critical preliminary factual issue which must be resolved before the Ashton incident can be deemed admissible.

Evidence Code section 400 et seq. set forth the procedures to be utilized when the admissibility of certain evidence turns on the determination of some "preliminary fact." ■ Here, the manner in which the Ashton incident occurred is the preliminary fact on which the admissibility of the prior act evidence turns. Section 403 addresses this situation. Subdivision (a) provides: "The proponent of the proffered evidence has the burden of producing evidence as to the existence of the preliminary fact, and the proffered evidence is inadmissible unless the court finds that there is evidence sufficient to sustain a finding of the existence of the preliminary fact, when: [¶] . . . [¶] (4) The proffered evidence is of . . . [the] conduct of a particular person and the preliminary fact is whether that person . . . so conducted himself." Subdivision (c)(1) goes on to provide that "[i]f the court admits the proffered evidence under this section, [i]t . . . [m]ay, and on request shall, instruct the jury to determine whether the preliminary fact exists and to disregard the proffered evidence unless the jury finds that the preliminary fact does exist."

The record does not reflect any recognition by the parties that the section 403 procedure applied to the prior act evidence in the present case. The trial court made no preliminary finding on the sufficiency of the evidence as required by subdivision (a), and the jury was never instructed consistent with subdivision (c)(1). All this is hardly surprising in view of the fact that, as far as we are aware, no case has ever suggested application of section 403 to prior act evidence.

It is true the trial court gave a modified CALJIC No. 2.50 instruction telling the jury that evidence of the Ashton incident was admitted for the limited purpose of demonstrating Simon's intent and motive. But this "limiting" instruction could only confuse the jury because it failed to acknowledge the disputed factual issue, thereby suggesting that evidence of the Ashton incident was probative of Simon's intent and motive regardless of which version of the facts the jury decided to accept. The instruction is doubly confusing because, even if the People's version is accepted, the Ashton incident does not demonstrate Simon's intent or motive but merely tends to negate one proffered motivation, i.e., Simon's claim of self-defense. (See *ante*, fn. 4.)

We need not resolve Simon's contention that the trial court should be required to instruct the jury sua sponte in accordance with subdivision (c)(1)

of Evidence Code section 403 in cases involving prior act evidence on the theory that such evidence is so inherently prejudicial that imposition of a sua sponte duty is justified. Here, the prejudice to Simon inhering in the lack of a (c)(1) instruction is compounded by the misleading nature of the CALJIC No. 2.50 instruction. In any event, given the novelty of the proposition, we cannot fault defense trial counsel here for failing to request a (c)(1) instruction. Considering these circumstances, including the trial court's failure to independently evaluate the sufficiency of the evidence under subdivision (a) and the critical impact of the evidence on this trial, we must reverse.

## II

We have determined that the judgment must be reversed to give Simon the benefit of a trial court evaluation of the sufficiency of the evidence indicating that he assaulted Ashton for jealous motives. ■■■ If the trial court determines that such evidence would be sufficient to support a jury finding that the incident occurred in the manner alleged by the People, Simon is entitled to a jury properly instructed on the preliminary fact it must find in order to even consider the prior act evidence and on the purpose for which such evidence may be considered. For the benefit of the court on retrial, we comment briefly on the standard of proof to be utilized by both the trial court and jury in making their respective preliminary fact evaluations.

■■■ Substantial Supreme Court precedent supports the conclusion that the People need only establish the relevance of the "other act" evidence by a preponderance of the evidence. The court first considered the standard of proof question in *People* v. *Lisenba* (1939) 14 Cal.2d 403 [94 P.2d 569]. In the context of rejecting a defendant's contention that prior criminal offenses must be proved beyond a reasonable doubt, the opinion merely noted that proof of such prior bad acts must be "substantial." (*Id.,* at pp. 431-432.) This same nebulous standard was reiterated in the plurality opinion in *People* v. *Albertson* (1944) 23 Cal.2d 550, 579-581 [145 P.2d 7]. Justice Traynor's concurring opinion, however, necessary to achieve a majority for the reversal of the defendant's conviction, clearly applies a preponderance-of-the-evidence test. (*Id.,* at p. 581 ("evidence . . . was insufficient to enable a reasonable jury to conclude that it was more probable that defendant committed the [prior] assault than that he did not").)

The preponderance standard was explicitly adopted and applied by the court in a series of cases decided in the mid-to-late 1960's. Typical is the discussion in *People* v. *Durham, supra,* 70 Cal.2d at p. 187, fn. 15: "Although a person charged with crime cannot be convicted thereof unless he

is proved guilty beyond a reasonable doubt, other uncharged offenses introduced to show the existence of some element of the charged crime need only be proved by a preponderance of substantial evidence." (Accord *People v. Polk* (1965) 63 Cal.2d 443, 451 [47 Cal.Rptr. 1, 406 P.2d 641]; *People v. Haston* (1968) 69 Cal.2d 233, 253 [70 Cal.Rptr. 419, 444 P.2d 91]; *People v. Cavanaugh* (1968) 69 Cal.2d 262, 273-274, fn. 9 [70 Cal.Rptr. 438, 444 P.2d 110]; *People v. McClellan* (1969) 71 Cal.2d 793, 805 [80 Cal.Rptr. 31, 457 P.2d 871]; see also *People v. Tewksbury* (1976) 15 Cal.3d 953, 965, fn. 12 [127 Cal.Rptr. 135, 544 P.2d 1335].)[5]

Our research has disclosed two cases which appear to depart from this otherwise consistent line of authority. In *People v. Wade, supra,* 53 Cal.2d 322, the court discussed the admissibility of evidence of collateral criminal offenses in the following terms: "It is the general rule that evidence of a collateral crime is inadmissible in a criminal prosecution for the asserted reason that its tendency to inflame and prejudice the jury outweighs its evidentiary value. (*People v. Albertson,* 23 Cal.2d 550, 576 [145 P.2d 7].) An exception to this rule is found, however, where the evidence of the prior or collateral criminal act is relevant to prove a specific and ascertainable feature of the crime on which the prosecution is founded, such as lack of mistake, motive or intent. *The connection of the accused with the collateral offense put into evidence must, however, be clear and convincing. (People v. Albertson, supra,* 23 Cal.2d 550, 577.)" (*Id.,* at p. 330, italics added.)

Interestingly, no mention of a "clear and convincing" standard is found in *Albertson* at page 577, nor does *Wade* accord any effect to Justice Traynor's concurring opinion in *Albertson* which clearly applied a "preponderance" test. (See *ante,* p. 132; cf. *People v. Harris, supra,* 71 Cal.App.3d at p. 966.) *Wade*'s reference to a "clear and convincing" standard then remained dormant for a decade until it reappeared in *People v. Terry* (1970) 2 Cal.3d 362, 396 [85 Cal.Rptr. 409, 466 P.2d 961], again without any supporting analysis as to why such a standard is appropriate.

Technically, the reference to a "clear and convincing" test in *Wade* and *Terry* is dicta. In both cases, the court concluded that the evidence was sufficient to connect the defendant with the prior uncharged offense. Necessarily, the result would have been the same even had a "preponderance"

---

[5]The inclusion of the word "substantial" appears to add nothing of substance to the preponderance test; to be legally sustainable all findings must be supported by "substantial" evidence. (See *People v. Johnson* (1980) 26 Cal.3d 557, 575-578 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].) Use of the word is undoubtedly traceable to the *Lisenba* and *Albertson* decisions which required "substantial" proof of the commission of prior bad acts. Not surprisingly, virtually all of the cited cases referencing the preponderance standard refer to *Albertson* and *Lisenba* in support of that proposition.

standard been applied. Moreover, analysis of the standard of proof issue is nonexistent in both cases. *Wade* erroneously cites *Albertson* as support for a "clear and convincing" test and *Terry* merely cites *Wade*.

In considering this issue, we have also reflected on the institutional effects of our choice of standards in a case such as this where we have apparently conflicting guidelines from the Supreme Court.[6] We could opt for the more exacting standard on the theory that a criminal defendant is entitled to the benefit of the doubt as to any ambiguity in the law. (See, e.g., *People* v. *Moreland* (1978) 81 Cal.App.3d 11, 17-18 [146 Cal.Rptr. 118].) Since the present case is being reversed on other grounds, use of the "clear and convincing" test on retrial would protect against a possible second reversal in the event Simon is again convicted. On the other hand, adopting the stricter test might create a ground for reversal in numerous cases which would otherwise be affirmed. If the Supreme Court views *Wade* and *Terry* as aberrations—which seems likely—our adoption of the "clear and convincing" test would force a grant of review in order to avoid such reversals. Given our institutional role, we believe it more prudent to follow the well-traveled "preponderance" path illuminated by decisions beginning with *Lisenba* and *Albertson* and continuing through *Haston* and *Durham*. We leave it to the Supreme Court if it so chooses to resurrect the "clear and convincing" language of *Wade* and *Terry* and, in so doing, to explain the basis for the stricter test.

■ Accordingly, on retrial, the trial court should first determine whether the evidence of the Ashton incident is sufficient to allow the jury to determine by a preponderance standard that Simon's assault on Ashton was motivated by jealousy. If it does so determine, the court may and if requested must instruct the jury that unless it determines by a preponderance of the evidence that Simon's motivation was jealousy, it must disregard the evidence of the Ashton incident.

---

[6]We recognize that each of the Supreme Court's references to the "clear and convincing" test have occurred in the context of connecting the defendant to the crime. One could thus posit a reconciliation of the two apparently inconsistent lines of cases by suggesting that the circumstances of the prior offense itself need only be proved by a preponderance of the evidence whereas defendant's commission of the offense must be established by clear and convincing proof. We find this attempted reconciliation both unpersuasive and unworkable. First of all, it is clear the standard has not been applied by the Courts of Appeal in the suggested manner. (See, e.g., *People* v. *Donnell, supra,* 52 Cal.App.3d at p. 777 ("In the instant case there was a preponderance of substantial evidence that defendant committed the [prior] robbery.").) Moreover, admissibility of collateral offense evidence normally depends both on the fact that the defendant committed the offense and that the circumstances of that offense are sufficiently similar to permit the desired inference as to motive, intent, etc., to be drawn. We can conceive of no rational basis for utilizing a different standard of proof depending on the nature of the preliminary fact which determines whether the evidence can be offered.

In view of our conclusion that a retrial is necessary, we need not address Simon's additional contention that the evidence was insufficient to warrant instructing the jury on first degree murder. In view of the jury's verdict acquitting him of first degree murder, he will be subject at most to a conviction of second degree murder on retrial. (See Pen. Code, §§ 687, 1023; see generally *Stone* v. *Superior Court* (1982) 31 Cal.3d 503 [183 Cal.Rptr. 647, 646 P.2d 809].)

DISPOSITION

Judgment reversed.

Kremer, P. J., and Butler, J., concurred.

**WIENER, J.,** Concurring.—A necessary predicate to the court's holding in this case is that evidence of prior unprovoked assaults by the defendant occurring under similar circumstances is admissible to negate a claim of self-defense. We are guided by and rely on valid Supreme Court precedent in support of that proposition (Maj. opn., *ante*, p. 129) and I am in accord with that reliance. I take the unusual step of writing a separate concurrence to an opinion I have authored for the court (see, e.g., *Hawkins* v. *Superior Court* (1978) 22 Cal.3d 584, 595 [150 Cal.Rptr. 435, 586 P.2d 916]) in order to highlight what I believe to be an inherent doctrinal tension between the proposition on which we rely and the Supreme Court's recent decision in *People* v. *Tassell* (1984) 36 Cal.3d 77 [201 Cal.Rptr. 567, 679 P.2d 1].

The notion that a defendant's prior assaultive conduct is admissible to negate his claim of self-defense derives principally from the Supreme Court's decision in *People* v. *Wells* (1949) 33 Cal.2d 330 [202 P.2d 53]. Wells was charged with an assault on a prison guard named Brown. He claimed he was defending himself from an attack by other guards when he accidently injured the victim. (*Id.*, at p. 339.) The prosecution's theory was that Wells was motivated by revenge in attacking Brown because the victim had previously reported Wells' violation of certain prison regulations. In support of the theory, the prosecution sought to introduce evidence of prior assaults committed by Wells against other prison guards. In particular, a prior assault by Wells on a guard named Jensen was relied on because Wells admitted striking Jensen in retaliation for Jensen's conduct two months earlier in subduing Wells during a disturbance. (*Id.*, at p. 341.)

The Supreme Court held that the evidence against Wells was properly admitted, explaining as follows: "The evidence of such other instances of misconduct was not admitted for the improper purpose of showing that defendant, because he had done many bad acts, was a bad person likely to

do other bad acts, and, therefore, probably committed the crime charged. Rather, it was admitted in order that the jury, if they believed it, might draw the following proper series of inferences: Because defendant, at various times during the 10 years before and at a time about three months after commission of the offense charged, expressed, by words and acts, feelings of hostility toward various custodial officers, he probably felt hostility and bore malice toward the class of custodial officers. Therefore, he probably was hostile to Brown, a member of the class against which his animosity was directed. Therefore, defendant probably injured Brown with 'malice aforethought' rather than by accident while engaged in actions prompted by honest fear for his own (defendant's) safety. More particularly, the 'Jensen incident,' similar in its circumstances to the present incident, permits the inference that since defendant had once availed himself of an opportunity to inflict physical vengence upon a guard who had participated in disciplining him, it was probable that when defendant injured another guard who had brought disciplinary charges against him he did so in a spirit of vengeance, not accidentally or because of honest fear." (*Id.*, at pp. 341-342, fn. omitted.)

The holding of *Wells* that evidence of prior similar unprovoked acts is admissible to negate a defendant's claim of self-defense was referred to again some years later in *People* v. *Sam* (1969) 71 Cal.2d 194 [77 Cal.Rptr. 804, 454 P.2d 700]. Sam was charged with murder arising out of his participation in a fight with another patron in a bar. The victim died of injuries inflicted when Sam kicked him in the stomach. Sam asserted that the victim was the aggressor in the fight and claimed self-defense. The prosecution introduced evidence of two prior incidents in which Sam severely injured a friend and a mistress by kicking them. Although the Supreme Court reversed Sam's conviction because it concluded evidence of the prior incidents had been improperly admitted, the court found potential merit in the Attorney General's claim, not raised before the trial court, that the evidence was admissible to negate Sam's self-defense claim. The court expressed its doubt that the probative value of the prior assaults with respect to negating self-defense would be sufficient to outweigh the prejudicial effect[1] but it nonetheless allowed the prosecution to raise and argue the issue on retrial. (*Id.*, at pp. 206-207.) Of particular significance is that the court reaffirmed the *Wells* principle by citing that case as an example of a situation in which the probative value of the prior act evidence in negating a self-defense claim was substantial. (*Id.*, at p. 206, fn. 2.)

---

[1]With regard to unwarranted prejudice, the court noted that the prior incidents portrayed Sam as a drunkard living with a woman other than his wife who frequently fought even with persons close to him. (*Id.*, at p. 206.)

Applied to the facts of this case, *Wells* and *Sam* indicate that evidence of the Ashton incident, if it was caused by Simon's jealous reaction, is admissible to negate his claim of self-defense. In that sense the Ashton incident is quite similar to the "Jensen incident" in *Wells;* both tend to impeach a defendant's story that his attack was motivated by honest fear for his own safety; both do so by demonstrating that a prior attack on an objectively similar victim resulted from a malicious motive such as revenge or jealousy. Moreover, the types of unwarranted collateral prejudice identified by the court in *Sam* are not present on this record.

I am concerned, however, that the reasoning of the Supreme Court's recent decision in *Tassell, supra,* 36 Cal.3d 77, may undercut the *Wells/Sam* doctrine. *Tassell* was a rape and oral copulation case in which the defendant admitted the acts but claimed the victim consented. In order to rebut defendant's claim, the prosecution introduced evidence of two prior acts of rape on arguably similarly situated victims.[2] The court held that such evidence was inadmissible because the only fact it tended to prove was defendant's disposition to commit similar crimes. (*Id.,* at p. 89.)

I have considerable difficulty conceptually distinguishing *Wells* and *Sam* on one hand and *Tassell* on the other. In both situations there is a factual dispute as to the manner in which the incident in question occurred. In the prototypical self-defense case, the defendant claims the victim was the aggressor. In the prototypical rape-consent case, the defendant claims the victim voluntarily participated in various sexual acts. Both such claims, if supported by the evidence, make conduct which would otherwise be criminal not so. In the *Wells/Sam* situation, the prior act evidence is introduced to suggest that if the defendant was the aggressor in prior similar situations, it is more likely he was the aggressor in the incident leading to the charged crime. In the *Tassell* situation, the prior act evidence is introduced to suggest that if the defendant forced himself on similar victims in the past, it is more likely he did so in the incident for which the defendant is now on trial.

Given the conceptual similarity of the self-defense and consent issues, one could argue that *Tassell* sub silentio overruled *Wells* and *Sam*. I have difficulty adopting this course, however, because *Tassell* repeatedly relies

---

[2]While there were important differences between the circumstances of the three incidents (the two prior acts and the current charged crime) there were also significant similarities which would appear to have logically justified the drawing of appropriate inferences regarding the lack of consent if such inferences were legally proper. (See generally *People* v. *Harvey* (1984) 163 Cal.App.3d 90, 100-105 [208 Cal.Rptr. 910].) The *Tassell* court's failure to discuss factual similarity or the lack of it suggests the court intended to hold that even assuming sufficient similarity between the prior acts and charged crime, such evidence is inadmissible to negate the defendant's claim of consent.

on *Sam* as a prime example of the correct analysis to be applied in prior act cases. (36 Cal.3d at pp. 86-87, 89, fn. 8.) I cannot believe the Supreme Court was merely referring to the result in *Sam*—exclusion of the evidence—without being aware of *Sam*'s express approval of the *Wells* principle.

The clear impact of *Tassell* is its rejection of a separate standard for the admissibility of prior acts in sex cases. Such a holding is unassailable. While it is only conjecture, I wonder whether the court's concern with making this forceful pronouncement deflected it from considering the impact of conceptually similar precedents such as *Wells* and *Sam*. Whether this be the case, or whether I have overlooked a defensible distinction which will reconcile *Wells* and *Sam* with *Tassell,* I feel compelled to follow *Wells* and *Sam* pending further guidance from the Supreme Court.

A petition for a rehearing was denied August 28, 1986, and respondent's petition for review by the Supreme Court was denied December 11, 1986.