Filed 12/2/15  P. v. Palmer CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>THOMAS FRANKLIN PALMER,<br><br>      Defendant and Appellant. | C072982<br><br>(Super. Ct. Nos. CM031208,<br>SCR60875) |

A jury found defendant Thomas Franklin Palmer guilty of numerous felony and misdemeanor charges and the trial court sentenced defendant to an aggregate term of eight years eight months in state prison.  On appeal, defendant contends the trial court erred in allowing the People to present evidence of a prior bad act in order to rebut defendant's claim of self-defense.  Defendant also contends the trial court erred in sentencing him to consecutive terms on his convictions for assault.

We conclude the evidence of defendant's prior bad act was properly admitted under Evidence Code section 1101, subdivision (b) and the trial court properly imposed

1

consecutive terms on defendant's assault convictions. Accordingly, we affirm the judgment.

In July 2009, defendant, Randy Jamison, Gary Raper, Robert Rusk, and Sheen Leduc lived together in a four bedroom house on a 1.4-acre lot. On July 27, 2009, defendant and Raper were in the kitchen; defendant was panfrying fish in oil for his dinner. Jamison came into the kitchen to get a steak to grill for his dinner. Defendant, who had a history of telling his roommates to get out of "his kitchen" when he was cooking said: " 'Every time I try to cook, somebody has got to come in my kitchen.' " Defendant then "grabbed" the pan he was cooking in, "slammed" it on the counter, and "stormed" out to his room (which was in the living room).

Jamison went outside to the deck with his steak. Moments later, defendant returned to the kitchen and resumed frying his fish. Jamison returned to the kitchen shortly thereafter and when he opened the refrigerator door, defendant began yelling at him; Jamison yelled back at defendant. Knowing that defendant and Jamison had been drinking beer that day, Gary told them to "shut up," to break it up, and to stop "acting like . . . kids." Jamison then started yelling at Raper and defendant took the frying pan off the stove and, using both hands, flung its contents at Jamison. The hot oil and fish hit Jamison's left side and splashed on Raper's right side. Jamison ran out to the deck (screaming in pain), defendant went back to his room, and Raper went to his room to get a towel.

Raper, walking out of his room and wiping himself off, saw defendant coming out of his room with a .22 rifle. Raper heard defendant say, " 'I'm going to kill that mother fucker.' " Meanwhile, Jamison was on the back deck with their other housemate Leduc. He asked Leduc to call 911. Then, less than a minute after Jamison ran outside, defendant walked out onto the deck carrying the rifle. Defendant grabbed the barrel of

2

the rifle and began to beat Jamison with its butt end, aiming the blows at Jamison's head. Jamison blocked the blows to his head with his arm, but the impact of the rifle caused Jamison's arm to split open, leaving a three inch laceration. Jamison fell to the deck, his arm bleeding.

While Jamison was lying on the deck, defendant grabbed a grill with hot coals in it and dumped the hot coals on Jamison. Jamison tried to block the coals with his arm, resulting in multiple burns on his arm. The grate from the grill landed on Jamison's stomach, burning him there as well. Jamison then rolled off the deck and made his way to the grass.

In September 2009, the People charged defendant with numerous felonies, including five counts of assault (Pen. Code, § 245; unless otherwise stated, statutory references that follow are to the Penal Code) and being a felon in possession of a firearm (§ 12021, subd. (a)(1)). Following a bench trial, defendant was convicted on all charges except one count of assault. (*People v. Palmer* (July 19, 2011, C063957) [nonpub. opn.].) The trial court sentenced defendant and defendant appealed. (*Ibid.*) In July 2011, this court reversed defendant's conviction and remanded the matter for a new trial. (*Ibid.*)

Following remittitur, a second amended information was filed charging defendant with four counts of assault and being a felon in possession of a firearm. At his second trial, this one before a jury, defendant argued that he acted in self-defense. To support his claim, defendant testified that Jamison was drunk and belligerent on the night of the assault. According to defendant, Jamison started an argument with Raper and threatened to beat him. Rather than beat Raper, however, Jamison charged at defendant, causing defendant to hit the pan of hot oil and fish, splashing oil on defendant's arm, back, and knee. Defendant said he was knocked to the ground and Jamison ran out the door. Worried his dog (who was in the kitchen according to defendant's testimony) may have been injured by the hot oil, defendant went to his bedroom where he heard her "yipping."

3

Defendant testified that his dog was not in his room so he went to the back deck to look for her. In the backyard, Jamison charged at defendant and defendant picked up the rifle he had set out earlier for their landlord. Defendant hit Jamison once with the rifle, Jamison tackled him to the ground, and defendant hit him again. Then, according to defendant, Jamison began pounding defendant's head into the deck and, as defendant shoved him away, he saw Jamison fall backward into the grills that were on the deck. Defendant was later treated for injuries to his knee, back, and arms.

Defendant also offered evidence that neither Raper nor Jamison liked him and neither liked living with him.

To rebut defendant's claim of self-defense, the People moved to admit testimony from defendant's former housemate Emmanuel Ugbah. Ugbah would testify that in 2007, defendant threatened him with a torch when Ugbah brought his exercise equipment into a shared room. Defendant objected, claiming the evidence was not admissible for any purpose under Evidence Code section 1101, subdivision (b) and was nothing more than "propensity" evidence, made inadmissible under Evidence Code section 1103. Defendant also argued admission of Ugbah's testimony violated numerous of his constitutional rights. The trial court found the evidence relevant to defendant's claim of self-defense and allowed Ugbah to testify.

Ugbah testified that in 2007, he and defendant were housemates. Ugbah's bedroom was adjacent to the sitting room where defendant kept his drum set. One day, defendant was playing his drums beyond the agreed upon time; defendant and Ugbah argued. To give defendant "a dose of his own medicine," Ugbah brought his exercise equipment into the sitting room. In response, defendant left the room and returned with a torch and can of accelerant. Defendant sprayed the accelerant at Ugbah's face, lit it with the torch, and said, " 'I'll burn you you son of a bitch.' " The flames did not actually touch Ugbah but he called the police. Defendant also called the police. Ugbah moved out the next day.

4

Following instruction from the trial court and closing arguments, the jury found defendant guilty of assaulting Jamison with hot grease, assaulting Jamison with a rifle, being a felon in possession of a firearm, and misdemeanor assault on Raper. The jury also found true the allegation that defendant inflicted great bodily injury when assaulting Jamison with the hot oil, but acquitted defendant on the charge of assaulting Jamison with the grill and hot coals. The trial court sentenced defendant to eight years eight months in state prison.

DISCUSSION

On appeal defendant contends the trial court abused its discretion in admitting Ugbah's testimony. He also contends the court erred in sentencing him to consecutive terms for assaulting Jamison with hot oil and with a rifle. Neither claim has merit.

A. *Evidence of Defendant's Prior Bad Conduct Was Properly Admitted*

Defendant claims the trial court abused its discretion in admitting evidence of defendant's previous fight with Ugbah in order to negate defendant's claim of self-defense. Specifically, he argues the only reason his previous fight with Ugbah was relevant was to show his "propensity for aggression," which is inadmissible character evidence. We are not persuaded, and conclude the evidence was admissible to negate defendant's claim of self-defense.

"Evidence of uncharged crimes is admissible to prove identity, common design or plan, or intent only if the charged and uncharged crimes are sufficiently similar to support a rational inference of identity, common design or plan, or intent." (*People v. Carter* (2005) 36 Cal.4th 1114, 1147.) Admissibility depends on the materiality to the current offense of the fact sought to be proved, the tendency of the uncharged act to prove the material fact, and whether there is any other rule requiring exclusion of the uncharged act. (*People v. Walker* (2006) 139 Cal.App.4th 782, 796.)

5

The least degree of similarity between the uncharged act and the charged offense is required in order to prove intent. (*People v. Ewoldt* (1994) 7 Cal.4th 380, 402.) The recurrence of similar results tends " 'to negative accident or inadvertence or self-defense or good faith or other innocent mental state, and tends to establish (provisionally, at least, though not certainly) the presence of the normal, i.e., criminal, intent accompanying such an act.' " (*Ibid.*) In order to be admissible to prove intent, the uncharged misconduct must be sufficiently similar to support the inference that the defendant " ' "probably harbor[ed] the same intent in each instance." ' " (*Ibid.*)

Here, the evidence was admitted against defendant only after he testified and claimed that in assaulting the victim he was acting purely in self-defense. His message to the jury was clear: he acted as he did only through the need to defend himself and he would not have so acted otherwise. Defendant's testimony affirmatively asserting a self-defense claim caused his mental state to become directly relevant; he denied that he had anything but a non-criminal, or otherwise innocent mental state at the time of the attack. Thus under *Ewoldt* his prior conduct was directly relevant to counter defendant's assertion that his mental state was innocent by tending to establish the presence of normal, i.e. criminal intent accompanying such an act. (*Ewoldt*, *supra*, 7 Cal.4th at p. 402.)

As earlier noted, *Ewoldt* recognized that the recurrence of similar results may negative a claim of self-defense tending to establish instead the presence of criminal intent. (*Ewodt, supra,* 7 Cal.4th 380 at p. 402.) Evidence of the incident with the former roommate was offered and admitted to establish that defendant did indeed act in a similar fashion during an earlier incident that did not involve self-defense thus tending to establish criminal intent here. This is a proper reason for Evidence Code section 1101, subdivision (b) evidence. (*People v. Simon* (1986) 184 Cal.App.3d 125, 129 [Section 1101(b) interpreted to admit "other act" evidence to negate self-defense].) There was no error.

"In addition to its relevance to an issue other than predisposition or propensity, to be admissible under [Evidence Code] section 1101, subdivision (b), the probative value of the evidence of uncharged crimes 'must be substantial and must not be largely outweighed by the probability that its admission would create a serious danger of undue prejudice, of confusing the issues, or of misleading the jury.' " (*People v. Walker, supra,* 139 Cal.App.4th at p. 796, quoting *People v. Kipp* (1998) 18 Cal.4th 349, 371.)

Here, the trial court did not abuse its discretion in admitting testimony regarding defendant's previous fight with Ugbah because defendant acted similarly in both instances. In the previous fight, defendant became angry with his housemate Ugbah, when Ugbah violated defendant's space. Defendant's response was to retreat to his room, then return and threaten to burn Ugbah with what was, essentially, a homemade blow torch.

Likewise, here, defendant was angry with his housemate for violating his space. An argument began and defendant threw hot oil at his housemate, then a grill filled with burning coals. In both instances, defendant demonstrated his intent to harm a housemate who encroached on defendant's space. Indeed, in both instances burning his housemates was his chosen method for threatening or inflicting harm. Accordingly, we conclude this evidence tended to negate defendant's claim of self-defense and was not unduly prejudicial, as the prior conduct was not remote and, although similar, was substantially less serious than the conduct of which defendant was currently accused. It was therefore admissible under Evidence Code section 1101, subdivision (b).

Defendant also claims the trial court's evidentiary ruling violated his due process rights. We disagree. The evidence was properly admitted under Evidence Code section 1101, subdivision (b) and there is no basis for the contention that admission of the evidence violated defendant's due process rights and rendered his trial fundamentally unfair. (*People v. Rogers* (2013) 57 Cal.4th 296, 332 [no due process violations when evidence was material, probative, and properly admitted].)

7

B.     *The Trial Court Properly Sentenced Defendant to Consecutive Prison Terms*

Defendant contends the sentence imposed on his conviction for assaulting Jamison with a rifle must be stayed under section 654 because it was part of one "continuous course of conduct" with his crime of assaulting Jamison with the hot oil and had the same intent and objective.

Section 654 provides in relevant part:  "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision."  "The failure of defendant to object on this basis in the trial court does not forfeit the issue on appeal.  [Citation.]" (*People v. McCoy* (2012) 208 Cal.App.4th 1333, 1338.)

" 'The proscription against double punishment in section 654 is applicable where there is a course of conduct which . . . comprises an indivisible transaction punishable under more than one statute . . . .  The divisibility of a course of conduct depends upon the intent and objective of the actor, and if all the offenses are incident to one objective, the defendant may be punished for any one of them but not for more than one.' [Citation.]  'The defendant's intent and objective are factual questions for the trial court; [to permit multiple punishments,] there must be evidence to support a finding the defendant formed a separate intent and objective for each offense for which he was sentenced.  [Citation.]' " (*People v. Coleman* (1989) 48 Cal.3d 112, 162; see *People v. Latimer* (1993) 5 Cal.4th 1203, 1208.)

Relying on this one-intent-and-objective test, defendant argues that he possessed the identical criminal intent during each assault on Jamison.  But "a finding that multiple offenses were aimed at one intent and objective does not necessarily mean that they constituted 'one indivisible course of conduct' for purposes of section 654.  If the

8

offenses were committed on different occasions, they may be punished separately."
(*People v. Kwok* (1998) 63 Cal.App.4th 1236, 1253.)

"As our Supreme Court has explained in referring to section 654, 'a course of conduct divisible in time, although directed to one objective, may give rise to multiple violations and punishment.' [Citation.] 'This is particularly so where the offenses are temporally separated in such a way as to afford the defendant opportunity to reflect and to renew his or her intent before committing the next one, thereby aggravating the violation of public security or policy already undertaken.' [Citation.] This rule has been applied in numerous instances when several crimes could broadly be described as part of an overarching criminal plan, but were committed on different days. [Citations.]" (*People v. Kurtenbach* (2012) 204 Cal.App.4th 1264, 1289, citing *People v. Beamon* (1973) 8 Cal.3d 625, 639, fn. 11.)

As noted by the trial court at sentencing, the two assaults were separated by time and space. The hot oil assault occurred in the kitchen, the rifle assault on the back deck. Contrary to defendant's assertion, this gave him sufficient time to reflect and renew his intent to continue the assault on Jamison. Indeed, it even gave defendant the opportunity to retrieve a new weapon.

We thus conclude the trial court properly sentenced defendant on both of his convictions for assaulting Jamison.

DISPOSITION

The judgment is affirmed.

                                          HULL                  , Acting P. J.


We concur:


_____MAURO_____, J.


_____DUARTE_____, J.