[No. D006650. Fourth Dist., Div One. June 2, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
FRANK HENRY BERGSCHNEIDER et al., Defendants and
Appellants.

COUNSEL

William Flenniken, Jr., and E. Stephen Temko, under appointments by the Court of Appeal, for Defendants and Appellants.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, M. Howard Wayne and David F. Taglienti, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**WIENER, Acting P. J.**—This case presents another variation on the all-too-recurring theme of intrafamilial sexual abuse. Here, a mother (Gladys Bergschneider) and stepfather (Frank Henry Bergschneider) were charged

with multiple counts of forcible sexual abuse of 14-year-old Tonia, Gladys's slightly mentally retarded daughter of an earlier marriage.[1] The jury found both defendants guilty on one count of forcible rape (Pen. Code, § 261, subd. (2)),[2] one count of forcible oral copulation (§ 288a (c)), one count of furnishing marijuana to a minor (Health & Saf. Code, § 11361) and one count of furnishing a controlled substance to a minor (Health & Saf. Code, § 11380). We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Tonia lived with her mother and stepfather in a bus which had been converted for use as the family's residence. There was no plumbing or running water. The family showered or bathed at Frank's ex-wife's house. Tonia slept on a small bed next to Frank and Gladys's larger bed. There was no wall or partition between the beds.

When Tonia was 13, Frank would occasionally touch Tonia's breasts underneath her shirt. He would also ask her to watch as he and Gladys engaged in sexual activities. After Tonia turned 14, Frank and Gladys approached her about having sex with Frank. They told her she was old enough to begin learning about sex. Gladys asked Tonia if she objected to "taking turns" having sex with Frank in order to give Gladys "a break." When Tonia replied, "I don't know," Frank threatened her with restriction.[3] Tonia then agreed.

Thereafter on a regular basis (usually on Saturday night), Frank had sex with Tonia. Frank would start by touching Tonia's breasts and orally copulating her. He would then tell her to relax and begin having intercourse. Tonia testified that intercourse with Frank was painful. Sometimes, Tonia would try to push Frank's head away when he attempted to orally copulate her or move her head from side to side if he tried to kiss her while having intercourse. On occasion she also placed her hands in front of her vagina to resist Frank but he simply pushed them aside.

While Frank and Tonia were having sex on the large bed, Gladys usually watched television on Tonia's bed. At one point, when Tonia complained about having sex with Frank, Gladys replied that they "had a good family

---

[1] Tonia was 15 years old at the time of trial but functioned intellectually at the level of an 8-to-10-year-old.

[2] Unless otherwise indicated, all statutory references are to the Penal Code. When referring to statutory subparts, we omit repetition of the word "subdivision."

[3] Tonia explained that if she were on restriction, she couldn't go anywhere or spend the night with anyone.

together." She told Tonia to put her legs up, relax and think of her boy-friend, David Wright.

Tonia testified she was engaging in intercourse with David Wright during the same period of time she was having sex with Frank.[4] Gladys and Frank were aware of this fact and initially permitted the conduct as long as Tonia was "protected." Later, Frank told Tonia and David to stop seeing each other because David was too old.

It was undisputed that Frank never hit Tonia or threatened to do so. Tonia testified, however, that she was afraid of Frank based in part on an incident several years earlier in which Frank had beaten Tonia's older brother, Joey. As a result of the beating, Joey was hospitalized and later placed in a foster home. On one occasion, Frank told Tonia it was all right for him to have sex with her because they were not related. At another time, however, Frank warned Tonia that if she told anyone about the sexual activities, she would "go to juvie, and [her] mom [would] be out on the street." Tonia also stated that her mother threatened to "kick my ass here to kingdom kong [sic]" if she told anyone about having sex with Frank.

In order to help her relax, Frank and Gladys gave Tonia marijuana to smoke. Frank and Tonia would have sex after she smoked the marijuana. Tonia was also given "crystal" on several occasions, which she ingested through her nose using a small straw. Tonia and Frank did not engage in sex after using "crystal."

Eventually, Tonia told Frank and Gladys that she didn't want to have sex with Frank anymore. Frank responded by putting Tonia on restriction and taking the car keys away from Gladys. Gladys told Tonia, "Thanks."

Tonia testified she had sex with Frank for the last time on Saturday night, September 6, 1986. On September 7, she told a friend that she couldn't spend the night at her house unless she had sex with Frank. That same evening, Tonia told the landlords of the property where the bus was parked that Frank had been molesting her. On September 11, in response to a phone call to the child abuse hotline, a social worker and sheriff's deputy interviewed Tonia at school. A short time later, Gladys was notified by the deputy that Tonia had been placed in "protective custody regarding a child molest." Gladys asked no questions; her only response was, "I under-stand."[5]

---

[4] David Wright was 22 years old at the time of trial.
[5] Tonia testified to a history of sexual molestation including incidents with her natural fa-ther, maternal grandfather and brother.

Defendants did not testify. Three relatives of Frank and Gladys expressed their opinion that Tonia was not a truthful person. Other evidence indicated that Frank participated in a work furlough program between April and June 1986, and therefore could not have been having sex with Tonia during that period.

## DISCUSSION

## I

### *Sufficiency of the Evidence*

We have previously recognized that the statutes dealing with sexual assault and sexual abuse present far from a consistent and comprehensive treatment of the relevant issues. (See *People* v. *Kusumoto* (1985) 169 Cal.App.3d 487, 494 [215 Cal.Rptr. 347].) In the context of reviewing this case we have discovered another anomaly. ■ For reasons which escape us, rape is the only major sexual assault crime which cannot be committed by means of duress. (See § 261(2); compare §§ 286(c), 288(b), 288a(c),and 289(a).)[6] Thus, the prosecutor in this case could rely on duress as a basis for the oral copulation charge but, as to the rape, was required to demonstrate that intercourse with Tonia was accomplished against her will "by means of force, violence, or fear of immediate and unlawful bodily injury on the person or another." (§ 261(2).) Despite this difference, our review of the entire record convinces us the evidence was sufficient to support a finding that the assaults on Tonia were accomplished by force, fear and duress.

## A

■ Defendants' principal contention is that the evidence is insufficient to support their conviction on a charge of forcible rape. The Bergschneiders argue it is undisputed Tonia agreed to have sex with Frank because she did not want to be placed on restriction. They contend that a threat of restriction does not constitute "force" within the meaning of section 261(2). Although we agree that intercourse motivated by the threat of restriction does not constitute forcible rape, other evidence in this case established that Frank accomplished the intercourse by means of force and/or fear.

If rape were defined simply as "sexual intercourse accomplished against a person's will," we would have little difficulty in concluding the evidence is

---

[6] Interestingly, had the prosecution charged the rape as a violation of section 288(b) rather than section 261(2), they would have been entitled to rely on duress as a means by which the crime could have been accomplished.

more than sufficient to support the convictions. Quite clearly, Tonia did not want to have sex with Frank and she made her desires known to both her mother and Frank. But the statute requires more. It requires that the victim's will be overcome by force, violence or the fear of physical injury. The mere threat of a restriction—although perhaps equally effective in some cases—is not the same as a threat of physical force.

The People rely on language in *People v. Cicero* (1984) 157 Cal.App.3d 465, 475 [204 Cal.Rptr. 582], suggesting that "'force' plays merely a supporting evidentiary role, as necessary only to insure an act of intercourse has been undertaken against a victim's will." (See also *People v. Young* (1987) 190 Cal.App.3d 248, 257-258 [235 Cal.Rptr. 361].) To the extent the People are asserting that proof of force or fear is unnecessary if it can be otherwise established that intercourse was against the victim's will, we have previously expressed our disagreement. (See *People v. Kusumoto, supra,* 169 Cal.App.3d at p. 493.) The *Cicero* court made its comment in rejecting an argument that proof of physical harm to the victim was necessary to establish "force." In fact, far from rejecting physical force as an element of the crime, *Cicero* specifically held that the People must prove "the defendant used physical force substantially different from or substantially greater than that necessary to accomplish the lewd act itself." (157 Cal.App.3d at p. 474.) The jury was so instructed here.

Other evidence presented to the jury, however, was sufficient to support a finding of force or fear. Although resistance is no longer a required element of the crime of rape (see *People v. Barnes* (1986) 42 Cal.3d 284, 302 [228 Cal.Rptr. 228, 721 P.2d 110]), the record demonstrates that Tonia did resist Frank's advances but that her resistance was physically overcome. ■ ■ ■ ■ ■ Frank's acts in pushing aside Tonia's hands constituted force greater than that necessary to accomplish the act of intercourse itself.[7] ■ ■ ■ ■ ■ Moreover, Tonia's testimony plainly demonstrates she feared physical harm from Frank as a result of his beatings of Joey and the circumstances were such as to allow the jury to infer that Frank was aware

[7] The evidence that Frank pushed Tonia's hands away was introduced through the testimony of Deborah Davies, a social worker at Children's Hospital who interviewed Tonia and described the contents of that interview. Apparently the general theory of admissibility of Davies's testimony was to introduce prior consistent statements made by Tonia to rehabilitate her credibility. (See generally Evid. Code, § 791.) Although Davies's testimony is ambiguous on the point, defendants suggest it must be read to indicate that Tonia's hands were forcibly removed only during the act of oral copulation and not in conjunction with an act of intercourse. Thus, they assert, the evidence is insufficient to establish that intercourse was accomplished by means of force.

Even if defendants' interpretation of the evidence is correct, we reject their conclusion. Where a defendant commits more than one sexual offense as part of a continuous incident, evidence that the first offense was accomplished by means of force will normally suffice to support a fact finder's conclusion that the force extended to the entire incident.

of Tonia's fear.[8] (See *People* v. *St. Andrew* (1980) 101 Cal.App.3d 450, 466 [161 Cal.Rptr. 634].)[9] Thus, the evidence was clearly sufficient to establish that Frank accomplished intercourse with Tonia "by means of force, violence, or fear of immediate and unlawful bodily injury . . . ." (§ 261(2).)

## B

In *People* v. *Pitmon* (1985) 170 Cal.App.3d 38 [216 Cal.Rptr. 221], the court defined duress as meaning "a direct or implied threat of force, violence, danger, hardship or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to (1) perform an act which otherwise would not have been performed or, (2) acquiesce in an act to which one otherwise would not have submitted." (*Id.* at p. 50.) ■ Despite this broad definition, Frank contends the evidence is insufficient to support his conviction of oral copulation by means of force or duress.

*Pitmon* explains that in assessing whether the totality of circumstances is sufficient to support a finding of duress, the age of the victim and relationship to the defendant must be considered. (170 Cal.App.3d at p. 51.) Here, we conclude the threats of restriction are sufficient to allow the jury to conclude that Frank accomplished the charged act of oral copulation with Tonia—a 14-year-old of limited mental capability—by means of duress. The threatened restriction constitutes "hardship or retribution" within the meaning of *Pitmon*. It was for the jury to determine whether a reasonable adolescent in Tonia's position would have been coerced.

Even if the evidence of duress were insufficient, we believe the facts would have allowed the jury to conclude that the act of oral copulation, like the act of intercourse, was accomplished by means of force. Tonia testified that when Frank attempted to orally copulate her, she unsuccessfully tried to push his head away. This represents the application of force "substantially greater than that necessary to accomplish the lewd act itself." (*People* v. *Cicero, supra,* 157 Cal.App.3d at p. 474.)

Accordingly, we conclude Frank was properly convicted of committing an act of oral copulation by means of force or duress.

---

[8] The People also rely on Gladys's threat to "kick [Tonia's] ass" if she told anyone about the activities. If believed, this evidence might be sufficient to support a conviction on the "fear of bodily injury" prong of the statute were it not for the fact that the threat was directed to Tonia's later *disclosure* of the sex acts and not the sex acts themselves. Tonia was never threatened with physical harm if she did not engage in sex.

[9] The trial court refused a proposed defense instruction which would have told the jury that a victim's fear must be reasonable and the defendant "must be aware [the victim] is only engaging in sexual intercourse because of such fear." As the Bergschneiders properly concede, however, *St. Andrew* holds that a defendant is guilty of rape even if he knowingly takes advantage of a victim's *unreasonable* fear. (See also *People* v. *Barnes, supra,* 42 Cal.3d at p. 304, fn. 20.) Accordingly, the proposed instruction was properly refused as inaccurate.

## II

### *Instructional Issues*

#### A

■ Defendants contend the court erred in failing to instruct the jury it had to unanimously agree on the act constituting the criminal offense. The jury was instructed in general terms on the unanimity requirement.[10] Frank contends this instruction was insufficient because it did not require agreement "on the facts of the conduct which compelled the sex acts." Gladys faults the instruction because it did not require the jury to agree on which act she committed which gave rise to her liability as an aider and abettor.

As we understand Frank's contention, he asserts he could not properly be convicted of forcible oral copulation if six jurors believed he physically resisted Tonia's efforts to push his head away whereas the other six jurors believed his threat of restriction constituted duress. The argument appears to be contrary to the line of cases holding the jury need not be unanimous as to the "theory" of the crime. (See *People* v. *Pitmon, supra,* 170 Cal.App.3d at p. 53; see also *People* v. *Milan* (1973) 9 Cal.3d 185, 195 [107 Cal.Rptr. 68, 507 P.2d 956], reaffirmed in *People* v. *Guerra* (1985) 40 Cal.3d 377, 386 [220 Cal.Rptr. 374, 708 P.2d 1252] [different theories of first degree murder]; *People* v. *Nor Woods* (1951) 37 Cal.2d 584, 586 [233 P.2d 897] [different theories of grand theft]; *People* v. *Failla* (1966) 64 Cal.2d 560, 567-569 [51 Cal.Rptr. 103, 414 P.2d 39] [different theories of felonious intent for burglary].) Other generally more recent cases, however, have suggested that federal constitutional principles may require that the jury unanimously agree on the facts constituting each element of the offense. (See *People* v. *Kent* (1981) 125 Cal.App.3d 207, 213 [178 Cal.Rptr. 28]; *People* v. *Gary* (1987) 189 Cal.App.3d 1212, 1218 [235 Cal.Rptr. 30]; see also *People* v. *McRae* (1967) 256 Cal.App.2d 95, 120-121 [63 Cal.Rptr. 854] [suggesting jurors must

---

[10] The court instructed the jury as follows: "In order to find the defendants guilty, it is necessary for the prosecution to prove beyond a reasonable doubt the commission of specific acts constituting said crime within the period alleged. [¶] They may be found guilty if the proof shows beyond a reasonable doubt that they committed any one or more of such acts, but in order to find the defendants guilty all the jurors must agree that the same act or acts were committed. It is not necessary that the particular act or acts so agreed upon be stated in the verdict. [¶] If you find that the defendants' conduct constituted an act or acts or rape by force or fear, that finding must be unanimous. However, there need not be unanimity as to how that act or conduct was achieved—that is, by use of force or fear—as long as all 12 jurors find that force or fear was utilized. [¶] If you find that the defendants' conduct constituted an act or acts of oral copulation by force or duress, that finding must be unanimous. However, there need not be unanimity as to how that act or conduct was achieved—that is, by use of force or duress—as long as all 12 jurors agree that force or duress was utilized."

agree as to the false statement constituting perjury].) Since the different "theories" may be based on different sets of underlying facts, there is an inherent tension between these two lines of cases which has yet to be resolved.

Assuming a unanimity requirement was theoretically applicable, we have previously stated such an instruction is unnecessary "unless there is evidence based on which reasonable jurors could disagree as to which act the defendant committed." (*People* v. *Schultz* (1987) 192 Cal.App.3d 535, 539-540 [237 Cal.Rptr. 513].) Here, the jury was either going to believe Tonia or not. There was no rational basis for accepting her testimony about the threatened restriction but rejecting it as to her efforts to push Frank's head away.

Gladys suggests that the entire basis for her liability could have been founded on different sets of facts. In that sense, her contention does not suffer from the same legal uncertainties regarding "elements" and "theories" which Frank's argument does. Nonetheless, we similarly are of the view that there was no basis upon which the jurors "could *both* accept *and* reject" different portions of Tonia's testimony as to her mother's involvement. (See *Schultz, supra,* 192 Cal.App.3d at p. 540, italics in original.)

With the exception of Frank's alibi evidence as to certain counts, the entire thrust of the defense was that Tonia was lying. The jury was largely faced with the simple choice of whether she had fabricated the entire story; in any event, the jurors could not rationally disagree as to what she was lying about. Accordingly, we conclude a more comprehensive unanimity instruction was not required.

### B

The jury was instructed on the force necessary to support a conviction for rape as follows: "Force is defined as physical force that is substantially different from or greater than that necessary to accomplish the unlawful act itself. The law does not require that force cause any physical harm. Nor does the law require the prosecution to prove resistance by the victim in order to prove the sexual intercourse was committed against the will of the victim.

"Evidence of pain, if believed by the trier of fact, is sufficient to establish substantial or significant injury in addition to that which must be present in every case of rape."

■ Frank complains about the last quoted sentence. He correctly points out that it has nothing to do with the subject being discussed. It was

requested by the prosecutor not in relation to the rape charge but rather pertaining to a child endangering charge against Gladys as to which the jury later returned a not guilty verdict.[11] In addition even as to the child endangering charge, the instruction is unsupported as a statement of law. The case relied on by the prosecutor in support of the instruction was depublished by the California Supreme Court six months before trial. (See *People* v. *Castro* (Cal.App.) B016922, ordered depublished Nov. 13, 1986.)[12]

Frank contends the vice of the instruction in the context of rape charge is that, by negative implication, it may have suggested to the jury that although physical harm is not required for a rape conviction, the victim's pain establishes physical injury which in turn establishes that force was used. The People appear to concede the instruction should not have been given but argue the error was not prejudicial because the prosecutor in argument referred to the instruction only in conjunction with discussing the child endangering charge. We agree that the error was harmless beyond a reasonable doubt. (See *Chapman* v. *California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711, 87 S.Ct. 824, 24 A.L.R.3d 1065]; *People* v. *Lee* (1987) 43 Cal.3d 666, 674 [238 Cal.Rptr. 406, 738 P.2d 752].) Here, as we have explained (see *ante,* pp. 153-154), there was substantial proper evidence of both force and fear and there was no reasonable basis for the jury to rely solely on Tonia's testimony of pain during intercourse as a reason for finding the rape was forcible.

C

■ Frank also contends the trial court's instructions on force were inadequate because they failed to inform the jury that psychological coercion did not constitute force within the meaning of section 288a. The exception is not well taken. The jury was instructed that "force" for the purposes of the oral copulation charge "means *physical* force that is substantially different from or substantially greater than that necessary to accomplish the lewd act itself." (Italics added.) Under this instruction, there is no possibility the jury could have found force based on psychological coercion.

---

[11] Penal Code section 273a(1) defines child endangering as follows: "Any person who, under circumstances or conditions likely to produce great bodily harm or death, willfully causes or permits any child to suffer, or inflicts thereon unjustifiable physical pain or mental suffering, or having the care or custody of any child, willfully causes or permits the person or health of such child to be injured, or willfully causes or permits such child to be placed in such situation that its person or health is endangered, is punishable by imprisonment . . . ."

[12] At issue in *Castro* was whether a "young virgin" rape victim's testimony regarding pain was sufficient to support a great bodily injury enhancement consistent with *People* v. *Caudillo* (1978) 21 Cal.3d 562 [146 Cal.Rptr. 859, 580 P.2d 274].

### III

*Evidence of the child sexual abuse accommodation syndrome*

 Psychologist Raymond Murphy was scheduled to testify for the prosecution concerning the child sexual abuse accommodation syndrome (CSAAS). Before trial and over defense objection, the court ruled that Murphy's testimony would be admissible subject to certain limitations.[13] The court offered to instruct the jury on the limitations and invited defense counsel to draft an appropriate limiting instruction. Apparently, no such instruction was ever submitted.

Murphy's testimony described in general terms the five stages of CSAAS. He used the syndrome as a framework within which to explain why abused children sometimes behave in ways which to adults seem inconsistent with their having been abused.

In several recent cases, this court has had occasion to comment on the admissibility of expert testimony concerning CSAAS and explore the circumstances under which the erroneous admission of such evidence will result in reversal of a judgment of conviction. In the first of those cases, *People* v. *Bowker* (1988) 203 Cal.App.3d 385 [249 Cal.Rptr. 886], we analyzed in some depth the Supreme Court's decision in *People* v. *Bledsoe* (1984) 36 Cal.3d 236 [203 Cal.Rptr. 450, 681 P.2d 291] dealing with the rape trauma syndrome and concluded that the principles enunciated in that case precluded the generalized introduction of testimony concerning

---

[13] In arguing for the admissibility of the testimony, the prosecutor stated: "I wanted to emphasize . . . the expert is not discussing any of the specific facts of this particular case and not rendering an ultimate opinion on whether or not Tonia was, in fact molested or by whom. The expert is simply there to enlighten the jury about the issues of the child sexual abuse accommodation syndrome, in general. [¶] I think already it's been made very apparent that there may be some misconceptions among the jury. There are concerns expressed by some of the jurors in terms of a delay in reporting, how it had gone on this long, and I think that an expert can be most helpful in addressing questions of delay in reporting, entrapment, accommodation to the entrapment, and the dynamics of the secrecy which is talked about in the syndrome."

Responding to defense counsel's argument that expert testimony was unnecessary to assist the jury, the trial court accepted the prosecutor's argument in ruling that the testimony would be admitted: "I think a fair response to that is the responses that a number of jurors have made which suggested that they presently, without having heard the evidence, have concerns over the duration of the charges, the apparent lack or failure of early response by the alleged victim to these attacks, some concerns expressed by them as to what you might expect a typical molest victim to be like or typical molest story to be like, all of which convey to me the simplicity that the *Kelly-Frye* standards have been sufficiently met to allow this expert to testify. [¶] The testimony, I am ruling, will be admissible . . . under the constraints as expressed by *Roscoe, Bledsoe,* and even *Gray* in that it will not be addressed to this particular case or this particular victim, but to the subject matter at large and in general."

CSAAS. We nonetheless recognized that child abuse experts could legitimately testify concerning the behavior of child abuse victims in order to disabuse the jury of misconceptions they might hold about how a child reacts to abuse. In particular, the expert will often be very helpful in pointing out that particular behavior by the victim (e.g., delayed reporting, changing factual details) is not inconsistent with their having been abused. (203 Cal.App.3d at pp. 392-393.)

██ In order to resolve the tension between the general inadmissibility of CSAAS testimony and the limited admissibility of closely related expert testimony aimed at eliminating misconceptions, we articulated two requirements. First, to be admissible on a misconception theory, the evidence must be targeted to a specifically identified misconception and narrowly limited to address only that misconception. Second, the jury should be instructed that it is not to use such testimony for the purpose of demonstrating that the victim was sexually abused. (203 Cal.App.3d at pp. 393-394.) ██ On the facts of the case, however, we concluded that the overbreadth of the testimony and the lack of a limiting instruction did not affect the result. (*Id.* at p. 395.)

Several months later in *People* v. *Bothuel* (1988) 205 Cal.App.3d 581 [252 Cal.Rptr. 596], we applied the *Bowker* requirements to a case in which the trial judge offered to give a limiting instruction regarding the use of the expert testimony but the defense counsel never followed up on the offer with a request. (*Id.* at p. 587.) We concluded the expert's testimony was broader than necessary but found that error harmless. (*Id.* at p. 588.) Recently in *People* v. *Sanchez* (1989) 208 Cal.App.3d 721 [256 Cal.Rptr. 446], we followed *Bowker* and *Bothuel* in holding that the admission of CSAAS testimony did not warrant reversal. In reaching our conclusion, we specifically rejected the defendant's contention that the admission of the expert testimony was necessarily error because it was introduced as part of the prosecution's case-in-chief. (*Id.* at pp. 735-736; see also *People* v. *Bowker, supra,* 203 Cal.App.3d at pp. 393-394.)

The circumstances of this case are quite similar to *Bothuel* in that much of Dr. Murphy's testimony was admissible within the limitations set out in *Bowker*. In fact, although the prosecutor sometimes strayed in eliciting " 'general' testimony on CSAAS" from Murphy (*Bowker, supra,* 203 Cal.App.3d at p. 393), she initially identified the misconceptions she sought to rebut (see *ante,* fn. 13) and generally focused on those misconceptions in her questioning of the psychologist. Also, as in *Bothuel,* the absence of a limiting instruction can be attributed to defense counsel's failure to accept the trial court's specific invitation to draft one. Finally, as in *Sanchez,* we do not believe the prosecutor is limited to introducing expert testimony of this nature on rebuttal if the particular misconceptions are targeted during the

case-in-chief. Here, during voir dire the jurors had apparently expressed skepticism regarding Tonia's credibility and defense counsel sought to exploit that skepticism during cross-examination. Accordingly, although Dr. Murphy's testimony was to some extent overbroad within the meaning of *Bowker,* we conclude it is not reasonably probable the jury would have reached a different conclusion had the testimony been more appropriately tailored. (See *Bowker, supra,* 203 Cal.App.3d at p. 395; *Bothuel, supra,* 205 Cal.App.3d at p. 589.)

## IV

### *Other Evidentiary Contentions*

Defendants claim the court made several erroneous evidentiary rulings which denied them a fair trial. Several of the errors deal with the court's failure to exclude evidence of uncharged crimes or improper character evidence. Counsel agree on the legal principles which govern our review of this issue. They disagree, however, on the application of those principles to the case before us.

Evidence of an accused's character or trait of his character is not admissible to prove he had a propensity to commit the crime with which he is presently charged nor is it admissible to prove he acted in conformity with that trait on a particular occasion. (Evid. Code, § 1100 et seq.;[14] *People* v. *Tassell* (1984) 36 Cal.3d 77, 86 [201 Cal.Rptr. 567, 679 P.2d 1]; *People* v. *Simon* (1986) 184 Cal.App.3d 125, 129 [228 Cal.Rptr. 855].)

 Character evidence is admissible in the form of reputation, opinion or specific acts on prior occasions. Regardless of its form, character evidence is inadmissible to show the defendant had the disposition to commit the crime. It is "well settled that evidence of a defendant's uncharged acts is not admissible to show he had the criminal disposition or propensity to commit the crime charged." (*People* v. *Simon, supra,* 184 Cal.App.3d 125, 129.)

Evidence of uncharged acts is admissible only if relevant to and used for purposes other than criminal disposition. In a criminal prosecution, evidence of collateral independent bad acts is not admissible unless it tends directly to establish the crime charged by proving a material fact such as motive, intent, premeditation or guilty knowledge. This rule is codified in section 1101 which states: "(a) Except as provided in this section and in Sections 1102 and 1103, evidence of a person's character or a trait of his or

---

[14] All statutory references in this part of the opinion are to the Evidence Code.

her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specific occasion.

"(b) Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or whether a defendant in a prosecution for an unlawful sexual act or attempted unlawful sexual act did not reasonably and in good faith believe that the victim consented) other than his or her disposition to commit such an act."

■ The admissibility of uncharged offenses or prior bad acts requires consideration of three factors: (1) the materiality of the fact sought to be proved or disproved; (2) the tendency of the uncharged crime to prove or disprove the material fact; and (3) the existence of any rule or policy requiring the exclusion of relevant evidence. (*People* v. *Tassell, supra,* 36 Cal.3d at p. 89, fn. 8, citing *People* v. *Thompson* (1980) 27 Cal.3d 303, 315 [165 Cal.Rptr. 289, 611 P.2d 883].)

To satisfy the requirement of materiality, the fact sought to be proved may be either an ultimate fact in the proceeding or an intermediate fact from which such ultimate fact may be presumed or inferred. Further, the ultimate fact to be proved must be actually in dispute. If an accused has not actually placed the ultimate fact in issue, evidence of uncharged offenses may not be admitted to prove it. (*People* v. *Thompson, supra,* 27 Cal.3d at p. 315.)

■ The test of admissibility of character evidence is therefore whether there is some clear connection between the collateral act and the one charged so that it may be logically inferred that if the defendant committed one offense, he must be guilty of the other. The test of relevance is whether the evidence tends logically, naturally, and by reasonable inference, to establish any facts material to the prosecution or to overcome any material matter sought to be proved by the defense. (*People* v. *Callan* (1985) 174 Cal.App.3d 1101, 1108-1109 [220 Cal.Rptr. 339].) The other uncharged offenses offered to prove a pattern, scheme, or plan must possess a sufficiently high degree of common features with the charged act before they are admissible. (*Ibid.*; see also *People* v. *Harvey* (1984) 163 Cal.App.3d 90, 100-101 [208 Cal.Rptr. 910].)

Character evidence is excluded because of its highly prejudicial effect. Evidence of a person's bad character as evidenced by specific examples of prior bad acts is deemed objectionable, not because it has no appreciable

probative value, but because it has too much. "Inevitably it tempts the 'tribunal . . . to give excessive weight to the vicious record of crime thus exhibited, and either to allow it to bear too strongly on the present charge, or to take the proof of it as justifying a condemnation irrespective of guilt of the present charge.'" (*People* v. *Alcala* (1984) 36 Cal.3d 604, 631 [205 Cal.Rptr. 775, 685 P.2d 1126], quoting 1 Wigmore, Evidence (3d ed. 1940) § 194, p. 646.)

Therefore, regardless of its probative value, evidence must be excluded under section 1101(a) if the inference it directly seeks to establish is solely one of propensity to commit crimes in general, or of a particular class. This rule has a particular application to "sex offenses." (*People* v. *Tassell, supra,* 36 Cal.3d at p. 86; *People* v. *Stanley* (1967) 67 Cal.2d 812, 818 [63 Cal.Rptr. 825, 433 P.2d 913].) Evidence of other criminal acts or matters describing a character is also inadmissible under section 352 if the probative value of such evidence is substantially outweighed by its prejudicial effect. With these considerations in mind, we discuss the defendant's specific claims of error.

## A

██ Over objection the court admitted evidence that in the spring and summer of 1985 Frank and Gladys furnished marijuana to Tonia and Joey. The prosecutor's theory was that the earlier furnishing of the drugs to Tonia and her older brother showed that the defendants had a later opportunity to furnish the drugs to Tonia. The prosecutor used a similar theory in offering the testimony of Wright who said he witnessed the defendants using marijuana and crystal methamphetamine in their house. The introduction of such evidence was based on the premise that it established the defendant's knowledge and opportunity to commit the charged offenses and had a tendency to prove that they furnished marijuana and methamphetamine to Tonia.

We are unable to discern from this generalized argument the statutory basis for admitting this evidence. The argument relies on the impermissible inference that because the defendants committed the criminal acts by furnishing Tonia and her older brother drugs in 1985, they probably did the same thing between April 1, 1986, and September 7, 1986, the period charged in the information. As noted earlier although such an inference is rational, it is statutorily proscribed. The court erred in receiving this evidence. The question is whether the error was prejudicial.

While we have reviewed innumerable cases involving sex abuse, this one is unique. It is, to say the least, rather atypical for a mother to offer her

daughter as a sexual surrogate to her spouse. As bizarre as the events described at trial were, however, there is little doubt they occurred. Even though Tonia may have been sexually active with persons other than her stepfather and parts of her testimony were inaccurate, this still was not a close case. Other than the jurors' natural reluctance to accept Tonia's description of the "truth is stranger than fiction" events which occurred in the defendants' "home," the jurors were given little else on which to base their verdicts. The nature of Tonia's testimony recounting defendants' depraved conduct is not of the type which could have been affected by the erroneously admitted evidence. Either the jurors believed Tonia or they did not. In the circumstances of this case, we conclude it is not reasonably probable that Tonia's credibility would have been diminished and that a different result would have occurred.[15] (See *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

## B

The defendants also say the court prejudicially erred by allowing the jury to hear testimony concerning sexual acts between Gladys and David Wright. In her offer of proof outside the presence of the jury regarding the alleged sexual relationship between Gladys and Wright, the prosecutor said Wright would testify that Gladys approached him and proposed they be sexually active and also allow Frank and Tonia to be sexual partners. The court accepted the offer insofar as the evidence tended to establish Gladys's knowledge of the sexual relationship between her husband and Tonia. At trial, Wright testified in part, "she [Gladys] wanted to have this thing, which—they had an open marriage, which he [Frank] would be with someone else and she would be with me, and she wanted to know if I wanted to be with her and she could be with Frank." Admittedly a fact finder could infer from this evidence that Gladys knew of, and intended to sustain, the sexual relationship between Frank and Tonia.

The difficulties associated with receiving such evidence, however, include the fact that there was no evidence that Frank knew about Gladys and David. As to Gladys, the evidence was minimally probative of her intent and knowledge because there was no significant dispute as to those states of mind. Defendants consistently argued that Tonia fabricated the entire series of incidents. Gladys's dialogue with Wright does not logically tend to prove she knew Tonia was being physically forced to have sex with Frank or that she was submitting to the acts out of fear of bodily injury. Based on these

---

[15]The likelihood of the testimony relating to use of drugs having any detrimental effect on the trial was also reduced by the court's admonition to the jury explaining that the defendants were not on trial for furnishing drugs to Joey nor were they on trial for furnishing marijuana to Tonia before April 1986.

considerations, application of the principles underlying section 352 strongly suggests the testimony should have been excluded.

Even if we assume the court erred in admitting such testimony, however, the error does not require reversal. We have tried to explain that the fact pattern here is such that there is no reasonable possibility the jury would switch its allegiance from one side to the other because it heard additional evidence describing the amoral manner in which the defendants lived. In another case, the character evidence received here might have traumatized the jury, substantially influencing the outcome. Here, however, the character evidence was relatively innocuous in light of the other evidence to which the victim testified in great detail.

## C

▉▉▉ Frank also argues the court committed reversible error by excluding evidence of specific instances of conduct to disprove the truthfulness of Tonia's and David Wright's testimony at trial. Before the defense commenced its case the prosecution successfully moved that any character evidence presented by the defense in terms of the victim's truth and veracity was to be limited only to opinion or reputation evidence and that specific instances of conduct were inadmissible for purposes of impeachment. The court ordered that "any evidence that comes in, if it is coming in to display bad character for truth and veracity, will be limited to reputation and/or opinion." Frank asserts there were three instances involving two key prosecution witnesses where the court improperly limited character evidence of the trait for untruthfulness to evidence of opinion and reputation when specific instances should have been admitted. He directs us to *People* v. *Adams* (1988) 198 Cal.App.3d 10, 17-18 [243 Cal.Rptr. 580] where the court held that the "Truth in Evidence" provision of Proposition 8 had the effect of repealing the provisions of section 787.[16]

We will assume for the purposes of this opinion that defense counsel's objection during the *in limine* proceedings was sufficient to preserve the issue for our review. As to the evidence of specific conduct by Tonia, we will also assume the court erred in excluding such evidence. In spite of these conclusions, however, there is no need for us to reverse the judgment. Tonia's credibility was thoroughly tested by vigorous cross-examination at trial. Donna Kurtz, Ted Bergschneider and Roberta Watson, three defense character witnesses, testified that in their opinion Tonia was a liar. We believe any error in excluding evidence of specific instances of Tonia's

---

[16] Section 787 provides that, as a general rule, "evidence of specific instances of his conduct relevant only as tending to prove a trait of his character is inadmissible to attack or support the credibility of a witness."

conduct to disprove the truthfulness of her testimony at trial was harmless as it is not reasonably probable a result more favorable to Frank would have been reached absent the error. (*People* v. *Watson, supra,* 46 Cal.2d at p. 836.)

■ To impeach David Wright's testimony at trial, Frank unsuccessfully sought to introduce evidence that Wright stole from his employer and thereafter lied about it. We reject Frank's contention that the court erred in excluding the testimony. A court has discretion to exclude proffered evidence under section 352 even when such evidence is otherwise admissible. A trial court must remain sensitive to the risk of using valuable judicial time in the proof of collateral matters. Section 352 allows the court to exclude evidence if its probative value is substantially outweighed by the probability that its admission will necessitate undue consumption of time, confuse the issues or mislead the jury. We are satisfied here that the court properly exercised its discretion in excluding defense counsel's request to inquire about a specific incident in which Wright allegedly stole property. (See *People* v. *Bothuel, supra,* 205 Cal.App.3d at pp. 594-595.)

### DISPOSITION

Judgment affirmed.

Todd, J., and Huffman, J., concurred.

A petition for a rehearing was denied June 28, 1989, and appellants' petition for review by the Supreme Court was denied August 17, 1989.