[No. B109409. Second Dist., Div. Seven. Nov. 21, 2001.]

THE PEOPLE, Plaintiff and Respondent, v.
RANDY ALAN VALENTINE, Defendant and Appellant.

**COUNSEL**

The Law Offices of Dennis A. Fischer, Dennis A. Fischer and John L. Ryan for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General,

Linda C. Johnson and Michael J. Wise, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**JOHNSON, Acting P. J.**—Appellant, Randy Alan Valentine (Valentine), was convicted following jury trial of 21 counts[1] of sex offenses against two young victims, N. C. and V. R. Valentine was thereafter sentenced to a total term of 81 years and four months in state prison and given a $15,000 fine. This appeal followed and raised the issue whether threatened "hardship" remains a form of "duress" justifying convictions for forcible oral copulation and forcible penetration by a foreign object. In our initial opinion in this case we concluded it does not and reversed the convictions for those offenses, a decision unaffected by Supreme Court review. Nonetheless, we amplify our initial opinion in this issue to take account of intervening decisions from other Courts of Appeal.

Our initial decision also held appellate courts ordinarily should not correct a prosecutor's failure to request a parole revocation fine in the trial court. The Supreme Court granted review limited to the latter issue—the parole revocation fine. After deciding *People v. Smith*,[2] the Supreme Court remanded this case with an instruction we reconsider in light of that opinion. Consistent with the Supreme Court's decision in *Smith* we impose a parole revocation fine on appellant.

### FACTS AND PROCEEDINGS BELOW

Both of the victims, N. C. and V. R., attended eighth grade during the 1990-1991 school year at the same middle school. Appellant was the girls' English teacher that year. Both girls spent a lot of time "hanging out" with appellant in his classroom during the school year. Appellant began physically molesting N. C. before Christmas 1990 and her 14th birthday in March

---

[1]Valentine was convicted of four counts of forcible oral copulation in violation of Penal Code section 288a in counts 2, 11, 13, and 16; eight counts of penetration by a foreign object in violation of Penal Code section 289, subdivision (a) in counts 3-10; one count of lewd act upon a child of 14 or 15 years of age in violation of Penal Code section 288, subdivision (c) in count 12; two counts of oral copulation of a person under 18 years of age in violation of Penal Code section 288a, subdivision (b)(1) in counts 14 and 17; two counts of penetration by a foreign object of a person under 18 years of age in violation of Penal Code section 289, subdivision (h) in counts 15 and 18; and four counts of lewd conduct with a child under 14 years of age in violation of Penal Code section 288, subdivision (a) in counts 19-22.

The jury was unable to reach a verdict on count one which was thereafter dismissed by the trial court.

[2]*People v. Smith* (2000) 24 Cal.4th 849 [102 Cal.Rptr.2d 731, 14 P.3d 942].

1991. The sexual nature of the molestation increased from rubbing, hugging and kissing to the fondling of N. C.'s breasts by the end of the school term.

That summer, appellant arranged a special summer session class solely for N. C. and V. R., ostensibly to prepare the girls for high school. During the session the sexual molestation continued both on and off campus.

A. V. is both the mother of N. C. and the wife of appellant. At the time her daughter attended the middle school, A. V. was a teacher's assistant at the school. She and appellant began dating the summer between N. C.'s eighth and ninth grades. As a result of the relationship with N. C.'s mother, appellant was a frequent visitor at their family apartment.

The molestation of N. C. continued and indeed escalated to the point appellant was digitally penetrating her vagina during the summer of 1991 while he dated her mother. In approximately October 1991, appellant moved into the family apartment. The molestation continued and soon included oral copulation, despite N. C.'s repeated requests appellant stop.

N. C. testified she did not report the incidents to anyone due to her fear her younger brothers would lose a father figure and her mother would lose a boyfriend. Additionally N. C. expressed concern her mother would blame her, and send her to live with her father in Mexico, if the molestation was discovered.

During the years of molestation, appellant would tell N. C. he loved her and wanted to marry her. Instead, appellant married N. C.'s mother in December 1993. But even after the marriage the situation continued. Appellant, now her stepfather, frequently sexually molested N. C. throughout her high school years.

In April 1995, the family moved for financial reasons to appellant's condominium in La Habra, where they all lived together until August or September, 1995. It was then N. C. moved out to attend college. Within one week of her departure, appellant ordered his wife, A. V., and her two sons out of the condominium. It was only then N. C. informed her mother of the long history of sexual molestation she had endured.

V. R. had been similarly victimized by appellant during her eighth grade school year. Like N. C., she had spent a lot of time with appellant alone in his classroom with the door closed. During this time, appellant had fondled her breasts, kissed her and promised to marry her someday. He told her not to tell anyone about their relationship. This conduct continued through the

special summer session tutorial appellant had arranged for V. R. and N. C. It was then V. R. reported the incidents of abuse to her mother. But the two of them opted not to report the situation to anyone and instead tried to put the situation behind them.

Appellant was charged and convicted of 21 counts of sexual abuse. However, all but nine years and four months of his 81-year sentence is attributable to 12 of those counts, involving forcible oral copulation and forcible digital penetration of N. C. It is those counts which are the primary subject of this appeal.

## DISCUSSION

Appellant contends the trial court erred in failing to instruct the jury on the meaning of the term "menace" and in the definition it gave for the term "duress." While we find the defendant waived any error in the trial court's failure to adequately define "menace" we conclude the trial court erred by including threatened "hardship" as a form of duress. Since we find this instructional error, as compounded by the prosecutor's argument, was prejudicial, we must reverse the forcible digital penetration and forcible oral copulation convictions which account for 72 years of the 81-year sentence imposed on appellant and remand for possible retrial before a properly instructed jury.

I. *The Trial Court's Failure to Define the Term "Menace" Constituted Invited Error.*

Initially we examine the record to determine whether appellant requested modification of the instructions given at trial. When a court gives instructions to a jury on a particular point at the request of the defense, the doctrine of invited error is activated to prevent the individual charged from gaining a reversal on appeal because of the erroneous instructions.[3]

Here appellant concedes his trial counsel urged the court to give an instruction containing the term "menace." Neither this instruction nor any other, however, defined "menace" because the court assumed "menace" is a word of common understanding.

Appellant failed to tender any instruction defining "menace." To allow him the chance to object now would be to fly in the face of the well-settled rule, ". . . defendant is not entitled to remain mute at trial and scream foul

---

[3]*People v. Wickersham* (1982) 32 Cal.3d 307 [185 Cal.Rptr. 436, 650 P.2d 311].

on appeal for the court's failure to expand, modify, and refine standardized jury instructions."[4]

## II. *The Trial Court Erred in Its Instruction Defining Duress" as Including Threatened "Hardship."*

■ Appellant contends the element of duress underlying his convictions under counts 2-11, 13 and 16 was improperly based on the threat of hardship to the victim and her family. Appellant further contends that as to those counts, he was improperly sentenced to full, separate and consecutive terms in prison based on a faulty definition of duress. We agree with appellant insofar as we find the trial court erred in its instruction on duress and thus appellant may have been convicted on the basis of threatened "hardship." We do not reach the sentencing issue since we reverse all 12 of the above counts.

Appellant was charged and convicted in counts 3 through 10 of eight separate instances of foreign object penetration (Pen. Code, § 289, subd. (a))[5] and of four acts of oral copulation (Pen. Code, § 288a, subd. (c))[6] in counts 2, 11, 13 and 16. He was sentenced to full separate and consecutive terms for each violation pursuant to the authority of Penal Code section 667.6, subdivision (d) which provides in relevant part: "full, separate, and consecutive term shall be served for each violation of . . . subdivision (a) of Section 289, . . . of committing oral copulation in violation of . . . Section . . . 288a *by force, violence, duress, menace,* or fear of immediate and unlawful bodily injury on the victim . . . ." (Italics added.)

Appellant contends the prosecution must establish the acts here were accomplished by means of duress—or one of the other listed forms of

---

[4]*People v. Daya* (1994) 29 Cal.App.4th 697, 714 [34 Cal.Rptr.2d 884].

[5]Penal Code section 289, former subdivision (a) prior to 1998 amendment read in pertinent part: "who causes the penetration, however slight, of the genital . . . openings of any person . . . for the purpose of sexual arousal, gratification, or abuse by any foreign object, substance, instrument, or device, or by any unknown object when the act is accomplished against the victim's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person or where the act is accomplished against the victim's will by threatening to retaliate in the future against the victim or any other person, and there is a reasonable possibility that the perpetrator will execute the threat . . . ." (Stats. 1994, 1st Ex. Sess. 1993-1994, ch. 40, § 4.5, pp. 3981-3982.)

[6]Penal Code section 288a, former subdivision (c) prior to 1998 amendment read in pertinent part: "who participates in an act of oral copulation with another person . . . when the act is accomplished against the victim's will by means of force, violence, duress, menace or fear of immediate and unlawful bodily injury on the victim or another person or where the act is accomplished against the victim's will by threatening to retaliate in the future against the victim or any other person, and there is a reasonable possibility that the perpetrator will execute the threat . . . ." (Stats. 1994, 1st Ex. Sess. 1993-1994, ch. 40, § 3, p. 3978.)

unlawful pressure—in order to convict him for forcible oral copulation and forcible digital penetration and thus to properly invoke this sentencing scheme. Furthermore, appellant contends the evidence of duress must not include "hardship" as it was a factor explicitly eliminated by the Legislature from the definition of duress when it amended the definition of duress in code sections for forcible rape and spousal rape.

As part of the instructions on forcible oral copulation and forcible digital penetration, the jury was instructed on various theories of duress, including hardship.

"As used in these instructions, the term 'duress' means a direct or implied threat of force, violence, danger, *hardship* or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to (1) perform an act which otherwise would not have been performed, or (2) acquiesce in an act to which one otherwise would not have submitted. The total circumstances, including the age of the victim, and her relationship to defendant, are factors to consider in appraising the existence of duress." (Italics added.)

In giving this instruction, the trial court erred by including "a direct or implied threat of . . . hardship" *within the definition of duress.* After thoroughly examining the legislative history we conclude the California Legislature intends to exclude "hardship" from the list of threatened harms which qualify as *forcible* oral copulation (Pen. Code, § 288a) or *forcible* penetration with a foreign object (Pen. Code, § 289, subd. (a)). The lawmakers clearly removed "hardship" from the definition of "duress" as to the crimes of forcible rape and spousal rape when they amended Penal Code sections 261 and 262 effective January 1, 1994. (Stats. 1993, ch. 595, § 1, 2, pp. 3120-3122.)[7] It is true the Legislature did not bother to amend section 288a or 289, subdivision a—or any other major sex crime statutes—to incorporate this or any other statutory definition of duress. Yet it appears absurd to interpret the statutory scheme as allowing a threat of hardship to justify a conviction for forcible digital penetration or oral copulation but not for forcible rape or spousal rape.

Indeed the 1994 amendment which deleted threatened "hardship" from the definition of "duress" was itself a correction to an earlier amendment of

---

[7]The relevant portion of this legislation merely repeats the then existing language of Penal Code sections 261 and 262, but with a "strikeout" line through the term "hardship." As a consequence a code provision which had read, " 'duress' means a direct or implied threat of force, violence, danger, *hardship*, or retribution" now reads " 'duress' means a direct or implied threat of force, violence, danger, or retribution." In effect, where the code had listed five basic types of duress, it now only lists four. As a result of this amendment a threat the defendant will impose some hardship on a victim if she refuses to consent to sex no longer qualifies as a grounds for conviction of forcible rape or spousal rape.

Penal Code sections 261 and 262, designed to bring the crime of rape in line with forcible oral copulation, oral penetration with a foreign object, and other major sex crimes. In 1989, *People v. Bergschneider*[8] had pointed out the absurdity of allowing duress to sustain charges for these other sex crimes but not for forcible rape. "For reasons which escape us, rape is the only major sexual assault crime which cannot be committed by means of duress."[9]

Legislation to cure this perceived anomaly was introduced in 1990 with language paralleling the same simple listing of "duress" along with "force," "violence," "menace" and "fear" as contained in Penal Code sections 288, 289, and other sex crime laws. However, during the legislative process the sponsors decided the term "duress" required definition. At first, the bill's authors adopted the Black's Law Dictionary definition but then replaced it with the Webster's Dictionary definition of "duress." It was the latter definition which included threatened "hardship" as a threat qualifying as "duress." (This definition is also the one the trial court employed in instructing the jury in the instant case.) The Legislature enacted this version and it became effective on January 1, 1991. However, three years later, as mentioned above, the Legislature amended the law to eliminate the term "hardship" from the definition of "duress."

The fact this statutory definition of "duress" resulted from an attempt to align the elements of rape and other major sex crimes is a further reason for applying that definition to these other sex crimes and not to confine it to rape. As the Penal Code chapter defining all these major sex crimes is presently organized, duress is defined in the earlier code sections, 261 and 262, then used in succeeding sections, without definition, as one of the potential bases for finding a defendant guilty of these other crimes. It is conceivable, barely, the Legislature intended one definition of duress for rape and another broader definition for the other major sex crimes. But it is far more probable the definition they provided in the early sections of this chapter is the one the lawmakers intended courts and jurors to apply every time the term is used in the chapter. The express purpose of amending the rape sections was to make them identical to the other major sex crimes and allow a conviction for rape to rest on the same finding of duress as would justify conviction for one of the other major sex crimes. We would defeat that purpose were we to construe "duress" in sections 288a and 289, subdivision (a) differently and more broadly than this same term is defined in sections 261 and 262. In doing so, we would reinstate the problem the Legislature intended to cure in the early 1990's.

---

[8] *People v. Bergschneider* (1989) 211 Cal.App.3d 144 [259 Cal.Rptr. 219].
[9] *People v. Bergschneider, supra,* 211 Cal.App.3d at page 152.

We recognize several Courts of Appeal have approved the Webster's Dictionary definition of duress which, as mentioned above, includes threatened hardship as a qualifying form of pressure on the victim.[10] However, most of these cases predate the Legislature's 1994 amendment deleting "hardship" from the definition of "duress" and, in any event, do not consider the legislative history or the implications of that amendment for the meaning of "duress" in the other major sex crime code sections, such as Penal Code sections 288a and 289, subdivision (a).

We likewise find unpersuasive the statements in *People v. Pitmon*[11] to the effect the term "duress" has "no technical meaning" and can be "commonly understood," presumably suggesting it requires no definition when instructing the jury. Assuming that were true in 1985 when *Pitmon* was decided, it is no longer accurate after the Legislature has defined the term "duress" in some detail and expressly removed threatened "hardship" from its initial definition of the term. To say a judge would be free to leave the definition of "duress" to the jury's "common understanding" or a jury could properly convict where a defendant has only threatened "hardship" and not "force, violence, danger, or retribution" is to defeat the Legislature's purpose in specifically defining the term "duress" and even more specifically removing threatened "hardship" from that definition.[12]

It is one thing or the other. If the ordinary definition of duress (as defined in Webster's 3d New Internat. Dict.) is so simple that it can be "commonly understood" by the jury without explanation from the court, then the California Legislature has created a departure from that "common understanding" by its exclusion of hardship from their concept of duress. At a minimum, that departure from the ordinary meaning of the term "duress" requires an explanation to the jury. On the other hand, if "duress" is not such a common concept, but one the Legislature found it important to expressly define in the Penal Code, then it has a "technical meaning" and the jury is entitled to a full definition of duress. Either way, the trial court needs to describe the concept in a way consistent with the statutory definition as excluding threatened "hardship" as a form of duress.

---

[10]See, e.g., *People v. Pitmon* (1985) 170 Cal.App.3d 38, 50 [216 Cal.Rptr. 221]; *People v. Superior Court (Kneip)* (1990) 219 Cal.App.3d 235, 238-239 [268 Cal.Rptr. 1]; and *People v. Cardenas* (1994) 21 Cal.App.4th 927 [26 Cal.Rptr.2d 567].

[11]*People v. Pitmon, supra,* 170 Cal.App.3d at page 52.

[12]In a supplemental letter brief, respondent claimed a Fourth District decision filed after our initial opinion in this case, *People v. Cochran* (2001) 89 Cal.App.4th 103 [107 Cal.Rptr.2d 119], review granted September 19, 2001 (S099260), was in conflict with our view. Although we found *Cochran* distinguishable on several grounds, we do not explain those grounds since the California Supreme Court subsequently granted review of that decision.

In a letter filed on the eve of oral argument on the appeal after remand, respondent cited a then very recent Second District case, *People v. Elam*,[13] as being in conflict with our opinion. It is true the *Elam* court held the trial court's failure to define the term "duress" was not error under the facts of that case. But those facts did not pose the issue before this court—whether threatened "hardship" remains a species of "duress" after the Legislature's 1994 amendment deleting that term from Penal Code section 261.

The *Elam* court expressly found it "need not decide whether the definitions of duress and menace found in Penal Code section 261, subdivisions (b) and (c), apply to other sexual offenses" in order to decide the issues before it.[14] Consequently, it cannot conflict with our conclusion the section 261, subdivision (b) definition of duress does apply to these offenses. Moreover, whether threatened "hardship" is embraced in the term "duress" and would be enough to justify a conviction for the crime charged in *Elam*—assault with intent to commit forcible oral copulation—likewise was neither relevant nor addressed in that opinion. As the *Elam* court held, the evidence only supported a finding the defendant sought to compel the victim to engage in oral copulation through the application of force. "[T]here was no evidence from which the jury could have found that defendant assaulted Sirena with the intent of applying duress or menace sufficient to obtain oral copulation as opposed to the intent to use such force."[15]

Respondent asks us, nevertheless, to rely on dicta within the *Elam* opinion where Division One suggests it is unnecessary for a court to define "duress" because the dictionary definition of the latter is the same as the statutory definition found in Penal Code section 261. In addition to being dictum, this is patently untrue at least as to the issue whether "hardship" is included within the term "duress." The statutory definition the Legislature enacted does *not* include "hardship"—and indeed intentionally omits that term—while the dictionary definition (or at least Webster's 3d New Intern. Dict. as quoted in the *Elam* opinion) does include "hardship" in its definition of "duress." The *Elam* court quotes both definitions only a few sentences apart, yet overlooks or at least fails to mention this salient difference.

One possible explanation is obvious. Because threatened "hardship" was not involved in the *Elam* case it is easy to understand how that court could have quoted the definition of "duress" found in Penal Code section 261 subdivision (b), a definition from which the Legislature deliberately struck the term "hardship," and yet find that statutory definition "do[es] not differ

---

[13]*People v. Elam* (2001) 91 Cal.App.4th 298 [110 Cal.Rptr.2d 185].
[14]*People v. Elam, supra*, 91 Cal.App.4th at page 307.
[15]*People v. Elam, supra*, 91 Cal.App.4th at page 308.

significantly from" the dictionary definition in Webster's Third New International Dictionary which includes "hardship" in its definition of "duress." The *Elam* court had no reason to focus on "hardship" because the evidence before it only supported force—not any form of duress, to say nothing of threatened hardship. Thus the court had no reason to look closely at the legislative history to determine whether the term had ever been included in—and then stricken from—the statutory definition. We are unwilling to assume the learned justices in Division One would make a ruling on the issue whether threatened "hardship" can justify a conviction for forcible oral copulation in the offhand and invisible way respondents urge they did in *Elam*.

Indeed if we accept respondent's reading of *Elam*, that decision has overruled the Legislature's 1994 amendment of Penal Code section 261 and reinstated threatened "hardship" as sufficient to support a rape conviction, too. For, it is the statutory definition of "duress" found in the rape section 261—the one from which the Legislature deliberately deleted "hardship"— which the *Elam* court found substantially identical to a dictionary definition that includes "hardship" as a species of "duress." If the dictionary definition trumps the statutory definition of duress then it does so for the crime of rape as well as for the crimes before the *Elam* court and before this court. Webster's Dictionary somehow prevails over California's Legislature in defining a statutory term. We sincerely doubt Division One would announce such a holding or that it did so in its *Elam* opinion.

III. *Including "Hardship" in the Definition of Duress Was Prejudicial in the Particular Circumstances of This Case.*

Once one accepts the proposition threatened "hardship" no longer qualifies as "duress" for purposes of Penal Code sections 288a and 289, subdivision (a), it cannot be seriously disputed the trial court erred in its instruction on duress and in the particular circumstances of the instant case this error was prejudicial. Having received the erroneous instruction, the jury could have found appellant guilty of violating sections 288a and 289, subdivision (a), on the basis of finding he had threatened N. C. with "hardship" even though the jurors did not find the defendant threatened "force" or "violence" or "danger" or "retribution." This means the jurors could have convicted appellant for conduct that is not an offense under the charges lodged against him in counts 2-11, 13 and 16. (Together these counts resulted in consecutive sentences totaling 72 of the 81 years and four months imposed on appellant.)

The prosecutor dramatically increased the risk the jury would base its verdict on this improper grounds when she emphasized "hardship" in her summation. Near the conclusion of her jury argument the prosecutor said:

"And another point that I want to make before I close is remember, ladies and gentlemen, that this is not force, this is not threats. The charges are—so this is incorrect on my chart, but it was corrected on yours—the charges are duress . . . . Duress is a direct or implied threat of force, violence, danger, *or hardship. And here we have hardship sufficient to coerce a reasonable person of ordinary susceptibilities to one or the other; either perform an act she would not otherwise perform or acquiesce in an act she would otherwise not do.*

*"Here we have the threats of hardship. 'I'm going to leave. The kids won't have a father.' Remember he got his clothes and went to the car when no one was home as if he was going to leave. 'I'm not going to be there for you.'* There were a lot of other reasons, other threats, as well." (Italics added.)

Thus, the prosecutor's closing argument was an open invitation to the jury to convict appellant of forcible oral copulation and forcible digital penetration on the basis not of threatened force or violence or danger or retribution, but because he threatened the victim with hardship if she did not continue to engage in these sexual acts.[16]

---

[16]In a petition for rehearing filed after our initial opinion, respondent urged the acts for which they are charging appellant occurred before the 1994 amendment striking "hardship" as one of the grounds for finding "duress." Respondent argues the Legislature did not expressly declare the 1994 amendment was retroactive in effect and thus appellant should be punished for forcible oral copulation and forcible digital penetration as to those earlier acts even under this court's conclusion the 1994 amendment changed the definition of "duress" for these categories of sex crimes as well as for forcible rape. This argument ignores *In re Estrada* (1965) 63 Cal.2d 740 [48 Cal.Rptr. 172, 408 P.2d 948], and its progeny, including *People v. Rossi* (1976) 18 Cal.3d 295 [134 Cal.Rptr. 64, 555 P.2d 1313]. In the latter case, the Supreme Court reversed a conviction for lewd conduct under Penal Code section 288a even though the Legislature amended the crime in defendant's favor after her conviction and while the case was on appeal. Here the Legislature redefined "duress" in appellant's favor several years before the prosecution even charged him with these offenses. If amendments redefining a crime while a case is on appeal bar conviction under the prior definition of criminal conduct, it is even more apparent they bar convictions under prosecutions first initiated several years later.

Respondent likewise expresses concern this interpretation will necessarily "open the flood-gates" to thousands of convicted child molesters. This argument ignores this court's discussion of whether the instructional error was harmless, as it would be in most such prosecutions. In this case, however, we found the prosecutor had relied heavily, indeed virtually exclusively, on the "hardship" with which appellant threatened his victims in order to make the case for forcible oral copulation and forcible digital penetration.

For these reasons, we are compelled to reverse the convictions for forcible oral copulation and forcible digital penetration (e.g., counts 2-11 and 13 and 16) and remand for a possible retrial before a properly instructed jury.[17]

IV. *The Trial Court Erred in Imposing a $15,000 Restitution Fine.*

■ Appellant contends the trial court committed error by imposing a $15,000 restitution fine. We agree.

The law is clear a restitution fine of no more than $10,000 is to be imposed in felony sentences.[18] It is true Penal Code section 288, subdivision (e) provides for an additional fine of up to $10,000, to be deposited into the Victim-Witness Assistance Fund, when a person has been convicted of violating this section. Appellant here was convicted of four such violations.

The Supreme Court in *People v. Scott*[19] adopted the so-called waiver doctrine in situations where a trial court fails to properly make or articulate a discretionary sentencing choice. The court reasoned counsel is charged with the responsibility of clarifying a defect in a sentence at the time the sentence is imposed. Failure to object at the time will result in a waiver of the right to later claim error. Clearly the trial court here wanted to impose an additional fine, possibly pursuant to Penal Code section 288. It is also clear the court had the authority to impose such a fine. However, the court failed to make the order or the findings required to do so.

The partial reversal does not affect the counts under which the additional $10,000 restitution fine is authorized. Nonetheless, since the record was unclear as to the type of fine being imposed and in view of the $10,000 limit on Penal Code section 1202.4 fines, we are restricted to that amount. The superior court will thus be directed to modify the judgment to show the restitution fine to be $10,000.

---

[17]We conclude it cannot be said the evidence was insufficient as a matter of law to convict appellant of forcible oral copulation or forcible penetration by a foreign object under Penal Code sections 288a and 289, subdivision (a). If a jury were to receive a definition of duress which deleted the term "hardship" and to hear a jury summation from the prosecutor which omitted this as a grounds for conviction, it might find evidence sufficient to convict on other grounds. Accordingly, we deny appellant's requested remedy—reducing some counts to lesser offenses and dismissing others entirely because the statute of limitations had expired on those lesser offenses. On remand, however, respondent may elect to request the trial court to reduce one or more of these counts to lesser offenses and impose the lesser penalties attaching to them.

[18]Penal Code section 1202.4, subdivision (b)(1).

[19]*People v. Scott* (1994) 9 Cal.4th 331, 352-356 [36 Cal.Rptr.2d 627, 885 P.2d 1040].

### V. *This Court Will Correct the Prosecution's Failure to Request a Parole Revocation Fine in the Trial Court.*

■ Respondent contends the trial court failed to impose a parole revocation fine as required by Penal Code section 1202.45 and requests this court to correct this error. Nothing indicates the prosecutor sought correction in the trial court. Nevertheless, we shall impose the requested parole revocation fine as required by the Supreme Court's decision in *People v. Smith.*[20]

### DISPOSITION

The convictions under counts 2-11, 13 and 16 are reversed and remanded to the superior court for further proceedings consistent with this opinion. The cause is further remanded to modify the judgment concerning the fines imposed by reducing the restitution fine to $10,000 and imposing a parole revocation fine in accordance with this opinion. In all other respects the judgment is affirmed.

Boland, J.,* concurred.

**WOODS, J.**—I concur in the judgment only. The majority's analysis of legislative intent pertaining to the issue of whether "hardship" was intentionally eliminated from the term "duress" for purposes of Penal Code sections 288a and 289, subdivision (a), is debatable, in my view. The majority's analysis on the issue is very close to engaging in judicial legislation. The Legislature may very well have had good reason to retain "threat of hardship" as inclusive in the term "duress" under the aforementioned Penal Code sections. I am willing, however, to engage in speculation with the majority as an act of legitimate statutory interpretation that the term was intended to be dropped by the Legislature, but I am uncomfortable in doing so. I respectfully invite the Legislature to revisit this issue at an early date for possible remedial legislation if the majority opinion indeed countermands the original intention of the Legislature.

Respondent's petition for review by the Supreme Court was denied February 27, 2002. Moreno, J., was of the opinion that the petition should be granted.

---

[20]*People v. Smith, supra,* 24 Cal.4th 849.

*Associate Justice of the Court of Appeal, Second Appellate District, Division Eight, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.