93 Cal.Rptr.2d 587 (2000)
78 Cal.App.4th 719
The PEOPLE, Plaintiff and Respondent,
v.
Randy Alan VALENTINE, Defendant and Appellant.
No. B109409.
Court of Appeal, Second District, Division Seven.
February 28, 2000.
As Modified March 15, 2000.
As Modified on Denial of Rehearing March 29, 2000.
Review Granted June 14, 2000.
*588 The Law Offices of Dennis A. Fischer, by Dennis A. Fischer, Los Angeles, and John L. Ryan, for Defendant and Appellant.
Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Carol Wendelin Pollack, Senior Assistant Attorney General, Linda C. Johnson, Supervising Deputy Attorney General, and Michael J. Wise, Deputy Attorney General, for Plaintiff and Respondent.
*589 JOHNSON, Acting P.J.
Appellant, Randy Alan Valentine (Valentine) was convicted following jury trial of twenty-one counts[1] of sex offenses against two young victims, N. C. and V. R. Valentine was thereafter sentenced to a total term of 81 years and four months in state prison and given a $15,000 fine. This appeal followed and raises the issue whether threatened "hardship" remains a form of "duress" justifying convictions for forcible oral copulation and forcible penetration by a foreign object. We conclude it does not and reverse the convictions for those offenses.

FACTS AND PROCEEDINGS BELOW
Both of the victims, N. C. and V. R., attended eighth grade during the 1990-91 school year at Samuel Gompers Middle School. Appellant was the girls' English teacher that year. Both girls spent a lot of time "hanging out" with appellant in his classroom during the school year. Appellant began physically molesting N. C. before Christmas 1990 and in March 1991. The sexual nature of the molestation increased from rubbing, hugging and kissing to the fondling of N. C.'s breasts by the end of the school term.
That summer, appellant arranged a special summer session class solely for N. C. and V. R., ostensibly to prepare the girls for high school. During the session the sexual molestation continued both on and off campus.
A. V. is both the mother of N. C. and the wife of appellant. At the time her daughter attended Gompers, A. V. was a teacher's assistant at the school. She and appellant began dating the summer between N. C.'s eighth and ninth grades. As a result of the relationship with N. C.'s mother, appellant was a frequent visitor at their family apartment.
The molestation of N. C. continued and indeed escalated to the point appellant was digitally penetrating her vagina during the summer of 1991 while he dated her mother. In approximately October 1991, appellant moved into the family apartment. The molestation continued and soon included oral copulation, despite N. C.'s repeated requests appellant stop.
N. C. testified she did not report the incidents to anyone due to her fear her younger brothers would lose a father figure and her mother would lose a boyfriend. Additionally N. C. expressed concern her mother would blame her and send her to live with her father in Mexico, if the molestation was discovered. During the years of molestation, appellant would tell N. C. he loved her and wanted to marry her. Instead, appellant married N. C.'s mother in December 1993. But even after the marriage the situation continued. Appellant, now her stepfather, frequently sexually molested N. C. throughout her high school years.
In April 1995, the family moved for financial reasons to appellant's condominium in La Habra, where they all lived together until August or September, 1995. It was then N. C. moved out to attend college. Within one week of her departure, appellant ordered his wife, A. V., and her two sons out of the condominium. It was only then N. C. informed her mother of the long history of sexual molestation she had endured.
V. R. had been similarly victimized by appellant during her eighth grade school year. Like N. C, she had spent a lot of time with appellant alone in his classroom with the door closed. During this time, *590 appellant had fondled her breasts, kissed her and promised to marry her someday. He told her not to tell anyone about their relationship. This conduct continued through the special summer session tutorial appellant had arranged for V. R. and N. C. It was then V. R. reported the incidents of abuse to her mother. But the two of them opted not to report the situation to anyone and instead tried to put the situation behind them.
Appellant was charged and convicted of 21 counts of sexual abuse. However, all but 9 years and four months of his 81-year-4-month sentence is attributable to 12 of those counts, involving forcible oral copulation and forcible digital penetration of N. C. It is those counts which are the primary subject of this appeal.

DISCUSSION
Appellant contends the trial court erred in failing to instruct the jury on the meaning of the term "menace" and in defining the term "duress." While we find the defendant waived any error in the trial court's failure to adequately define "menace," we conclude the trial court erred by including threatened "hardship" as a form of duress. Since we find this instructional error, as compounded by the prosecutor's argument, was prejudicial, we must reverse the forcible digital penetration and forcible oral copulation convictions which account for 72 years of the 81-year-4-month sentence imposed on appellant.

I. THE TRIAL COURT'S FAILURE TO DEFINE THE TERM "MENACE" CONSTITUTED "INVITED ERROR."

Initially we examine the record to determine whether appellant requested modification of the instructions given at trial. When a court gives instructions to a jury on a particular point at the request of the defense, the doctrine of invited error is activated to prevent the individual charged from gaining a reversal on appeal because of the erroneous instructions. (People v. Wickersham (1982) 32 Cal.3d 307, 185 Cal. Rptr. 436, 650 P.2d 311.)
Here appellant concedes his trial counsel urged the court to give an instruction including "menace." This was done on the court's assumption that menace is a word of common understanding. Defense offered nothing further. Clearly to allow appellant the chance to object now would be to fly in the face of the well settled rule, "... defendant is not entitled to remain mute at trial and scream foul on appeal for the court's failure to expand, modify, and refine standardized jury instructions." (People v. Daya (1994) 29 Cal.App.4th 697, 714, 34 Cal.Rptr.2d 884.)

II. THE TRIAL COURT ERRED IN ITS INSTRUCTION DEFINING "DURESS" AS INCLUDING THREATENED "HARDSHIP" AND THIS ERROR WAS PREJUDICIAL IN THE CIRCUMSTANCES OF THIS CASE.

Appellant contends the element of duress underlying his convictions under counts 2-11, 13 and 16 were improperly based on the threat of hardship to the victim and her family. Appellant further contends that as to those counts, he was improperly sentenced to full, separate and consecutive terms in prison based on a faulty definition of duress. We agree with appellant insofar as we find the trial court erred in its instruction on duress and thus appellant may have been convicted on the basis of threatened "hardship." We do not reach the sentencing issue since we reverse all 12 of the above counts.
Appellant was charged and convicted in counts 3 through 10 of eight separate instances of foreign object penetration (Pen. Code, § 289, subd. (a))[2] and of four acts of *591 oral copulation (Pen.Code, § 288a, subd. (c))[3] in counts 2, 11, 13 and 16. He was sentenced to full separate and consecutive terms for each violation pursuant to the authority of Penal Code section 667.6, subdivision (d) which provides in relevant part: "... full, separate, and consecutive term shall be served for each violation of ... subdivision (a) of Section 289, ... of committing oral copulation in violation of ... Section 288a, ... by force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim...." (Emphasis added.)
Appellant contends the prosecution must establish the acts here were accomplished by means of duressor one of the other listed forms of unlawful pressurein order to convict him for forcible oral copulation and forcible digital penetration and thus to properly invoke this sentencing scheme. Furthermore, appellant contends the evidence of duress must not include "hardship" as it was a factor explicitly eliminated by the Legislature from the definition of duress when it amended the definition of duress in code sections for forcible rape and spousal rape.
As part of the instructions on forcible oral copulation and forcible digital penetration, the jury was instructed on various theories of duress, including hardship.
"As used in these instructions, the term `duress' means a direct or implied threat of force, violence, danger, hardship or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to (1) perform an act which otherwise would not have been performed, or (2) acquiesce in an act to which one otherwise would not have submitted. The total circumstances, including the age of the victim, and her relationship to defendant, are factors to consider in appraising the existence of duress." (Italics added.)
In giving this instruction, the trial court erred by including "a direct or implied threat of ... hardship" within the definition of duress. After thoroughly examining the legislative history we conclude the California Legislature intends to exclude "hardship" from the list of threatened harms which qualify as forcible oral copulation (288a) or forcible penetration with a foreign object (289, subdivision (a)). The lawmakers clearly removed "hardship" from the definition of "duress" as to the crimes of forcible rape and spousal rape when they amended Penal Code sections 261 and 262 effective January 1, 1994. (Stats.1993, ch. 595, §§ 1 and 2, pp. 3121 and 3122.)[4] It is true the Legislature did not bother to amend sections 288a or 289, subdivision (a)or any other major sex crime statutesto incorporate this or any other statutory definition of duress. Yet it appears absurd to interpret the statutory scheme as allowing a threat of hardship to justify a conviction for forcible digital penetration or oral copulation but not for forcible rape or spousal rape.
Indeed the 1994 amendment which deleted threatened "hardship" from the definition of "duress" was itself a correction to an earlier amendment of 261 and 262 designed to bring the crime of rape in line *592 with forcible oral copulation, oral penetration with a foreign object, and other major sex crimes. In 1989, People v. Bergschneider (1989) 211 Cal.App.3d 144, 259 Cal.Rptr. 219 had pointed out the absurdity of allowing duress to sustain charges for these other sex crimes but not for forcible rape. "For reasons which escape us, rape is the only major sexual assault crime which cannot be committed by means of duress." (211 Cal.App.3d at p. 152, 259 Cal.Rptr. 219.)
Legislation to cure this perceived anomaly was introduced in 1990 with language paralleling the same simple listing of "duress" along with "force," "violence," "menace" and "fear" as contained in 288, 289, and other sex crime laws. However, during the legislative process the sponsors decided the term "duress" required definition. At first, the bill's authors adopted the Black's Law Dictionary definition but then replaced it with the Webster's Dictionary definition of "duress." It was the latter definition which included threatened "hardship" as a threat qualifying as "duress." (This definition is also the one the trial court employed in instructing the jury in the instant case.) The Legislature enacted this version and it became effective on January 1, 1991. However, three years later, as mentioned above, the Legislature amended the law to eliminate the term "hardship" from the definition of "duress."
The fact this statutory definition of "duress" resulted from an attempt to align the elements of rape and other major sex crimes is a further reason for applying that definition to these other sex crimes and not to confine it to rape. As the Penal Code chapter defining all these major sex crimes is presently organized, duress is defined in the earlier code sections, 261 and 262, then used in succeeding sections, without definition, as one of the potential bases for finding a defendant guilty of these other crimes. It is conceivable, barely, the Legislature intended one definition of duress for rape and another broader definition for the other major sex crimes. But it is far more probable the definition they provided in the early sections of this Chapter is the one the lawmakers intended apply every time the term is used in the Chapter. The express purpose of amending the rape sections was to make them identical to the other major sex crimes and allow a conviction for rape to rest on the same finding of duress as would justify conviction for one of the other major sex crimes. We would defeat that purpose were we to construe "duress" in sections 288a and 289, subdivision (a) differently and more broadly than this same term is defined in sections 261 and 262. In doing so, we would reinstate the problem the Legislature intended to cure in the early 1990's.
We recognize several courts of appeal have approved the Webster's definition of duress which, as mentioned above, includes threatened hardship as a qualifying form of pressure on the victim. (People v. Pitmon (1985) 170 Cal.App.3d 38, 50, 216 Cal.Rptr. 221; People v. Superior Court (Kneip) (1990) 219 Cal.App.3d 235, 238-239, 268 Cal.Rptr. 1; and People v. Cardenas (1994) 21 Cal.App.4th 927, 26 Cal. Rptr.2d 567.) However, these cases predate the Legislature's 1994 amendment deleting "hardship" from the definition of "duress" and, in any event, do not consider the legislative history or the implications of that amendment for the meaning of "duress" in the other major sex crime code sections, such as 288a and 289, subdivision (a).
We likewise find unpersuasive the statements in People v. Pitmon, supra, 170 Cal.App.3d at p. 52, 216 Cal.Rptr. 221 to the effect the term "duress" has "no technical meaning" and can be "commonly understood," presumably suggesting it requires no definition when instructing the jury. Assuming that were true in 1985 when Pitmon was decided, it is no longer accurate after the Legislature has defined the term "duress" in some detail and expressly removed threatened "hardship" from its initial definition of the term. To say a judge would be free to leave the *593 definition of "duress" to the jury's "common understanding" or a jury could properly convict where a defendant has only threatened "hardship" and not "force, violence, danger, or retribution" is to fly in the face of several canons of statutory construction.
Once one accepts the proposition threatened "hardship" no longer qualifies as "duress" for purposes of 288a and 289, subdivision (a), it cannot be seriously disputed the trial court erred in its instruction on duress and in the particular circumstances of the instant case this error was prejudicial. Having received the erroneous instruction, the jury could have found appellant guilty of violating 288a and 289, subdivision (a) on the basis of finding he had threatened N. C. with "hardship" even though the jurors did not find the defendant threatened "force" or "violence" or "danger" or "retribution." This means the jurors could have convicted appellant for conduct that is not an offense under the charges lodged against him in counts 2-11, 13 and 16. (Together these counts resulted in consecutive sentences totaling 72 of the 81 years and four months imposed on appellant.)
The prosecutor dramatically increased the risk the jury would base its verdict on this improper ground when she emphasized "hardship" in her summation. Near the conclusion of her jury argument the prosecutor said: "And another point that I want to make before I close is remember, ladies and gentlemen, that this is not force, this is not threats. The charges are  so this is incorrect on my chart, but it was corrected on yours  the charges are duress.... [¶] Duress is a direct or implied threat of force, violence, danger, or hardship. And here we have hardship sufficient to coerce a reasonable person of ordinary susceptibilities to one or the other; either perform an act she would not otherwise `perform or acquiesce in an act she would otherwise not do. [¶] Here we have the threats of hardship. `I'm going to leave. The kids won't have a father.' Remember he got his clothes and went to the car when no one was home as if he was going to leave? `I'm not going to be there for you.' There were a lot of other reasons, other threats, as well." (Italics added.)
Thus, the prosecutor's closing argument was an open invitation to the jury to convict appellant of forcible oral copulation and forcible digital penetration on the basis not of threatened force or violence or danger or retribution, but because he threatened the victim with hardship if she didn't continue to engage in these sexual acts.[5]
For these reasons, we are compelled to reverse the convictions for forcible oral copulation and forcible digital penetration *594 (e.g., counts 2-11 and 13 and 16) and remand for a possible retrial before a properly instructed jury.[6]

III. THE TRIAL COURT ERRED IN IMPOSING A $15,000 RESTITUTION FINE.

Appellant contends the trial court committed error by imposing a $15,000 restitution fine. We agree.
The law is clear a restitution fine of no more than $10,000 is to be imposed in felony sentences. (Pen.Code, § 1202.4, subd. (b)(1).) However, Penal Code section 288, subdivision (e) provides for an additional fine of up to $10,000, to be deposited into the Victim-Witness Assistance Fund, when a person has been convicted of violating this section. Appellant here was convicted of four such violations.
The Supreme Court in People v. Scott (1994) 9 Cal.4th 331, 352-356, 36 Cal.Rptr.2d 627, 885 P.2d 1040, adopted the so-called waiver doctrine in situations where a trial court fails to properly make or articulate a discretionary sentencing choice. The court reasoned counsel is charged with the responsibility of clarifying a defect in a sentence at the time the sentence is imposed. Failure to object at the time will result in a waiver of the right to later claim error. Clearly the trial court here wanted to impose an additional fine, possibly pursuant to Penal Code section 288. It is also clear the court had the authority to impose such a fine. However, the court failed to make the order or the findings required to do so.
The counts under which the additional $10,000 restitution fine is authorized are not affected by the partial reversal in this case. Nonetheless, since the record was unclear as to the type of fine being imposed and in view of the $10,000 limit on Penal Code section 1202.4 fines, we are restricted to that amount. The superior court will thus be directed to modify the judgment to show the restitution fine to be $10,000.

IV. THE APPELLATE COURT WILL NOT CORRECT THE PROSECUTION'S FAILURE TO REQUEST A PAROLE REVOCATION FINE IN THE TRIAL COURT.

Respondent contends the trial court failed to impose a parole revocation fine as required by Penal Code section 1202.45. However, nothing indicates the prosecutor sought correction in the trial court.
We decline to impose a parole revocation fine not requested in the trial court. This court had been refusing to do so, on waiver grounds, in other cases, primarily to treat the prosecution and defendant with "symmetry" when they fail to raise issues favorable to their side during sentencing proceedings. Shortly before this opinion was filed, the Supreme Court endorsed that position and did so largely for the same reasons of fairness and equity as had prompted this court to deny the prosecution's request for appellate relief after failing to seek these restitution fines in the trial court. (People v. Tillman (2000) 22 Cal.4th 300, 92 Cal.Rptr.2d 741, 992 P.2d 1109.)
Therefore, we deny the respondent's request to impose the parole revocation fine pursuant to Penal Code section 1202.45 at this time.

DISPOSITION
The convictions under counts 2-11, 13 and 16 are reversed and remanded to the superior court for further proceedings consistent with this opinion. The cause is further remanded to modify the judgment *595 concerning the fine imposed in accordance with this opinion. In all other respects the judgment is affirmed.
NEAL, J., concurs.
CHAVEZ, J.,[*] Dissenting.
Appellant contends that the element of duress underlying his conviction was improperly based on the threat of hardship to the victim and her family. Appellants view is that evidence of duress must not include "hardship" as it was a factor explicitly eliminated by the Legislature from the definition of duress. To reach that conclusion one must realize that prior to 1990 the crime of rape (Pen.Code, § 261) was the only sexual assault crime that could not be committed by duress alone. Some sort of force was required. Following the court's decision in People v. Bergschneider (1989) 211 Cal.App.3d 144, 259 Cal.Rptr. 219, Penal Code section 261(a)(2) was amended including duress as a factor. Appellate here provides detailed information concerning the definition of duress that was then discussed. In 1993, both Penal Code sections 261 (rape) and 262 (spousal rape) were amended. Appellant contends that the definition of duress as to those statutes was then limited to specifically exclude "hardship" as part of the definition of duress. Appellant suggests that we should extend this limited definition of duress to this case and reverse his conviction, apparently because the crimes here are sexual assaults (Pen. Code, §§ 288a(c) and 289(a)) as are rape and spousal rape.
While the majority is of the view that the Legislature intended the more limited definition of duress in all sex crimes, that is not the move that they made. The Legislature had the option to modify all the pertinent statutes if that was their intent. Instead they selected only rape and spousal rape for the more limited definition of duress. One can readily understand why law makers would make a distinction between such crimes as these and other sexual assaults. Therefore I find persuasive the language in People v. Pitmon, supra, 170 Cal.App.3d 38, 52, 216 Cal.Rptr. 221,
"It is clear that the definition of duress we have adopted from Webster's Dictionary has no technical meaning.... [D]uress can be commonly understood,...."
Here there are ample facts to support a finding of duress. For example, appellate was N. C.'s teacher, a person in a position of trust as to the young victim. Appellant also encouraged N. C. to love him by expressing an interest in marrying her someday. Add to that N. C.'s stated fear that her family would be deprived of a father-husband figure if the molestation were discovered or that she would be banished from the household and forced to reside in Mexico with her father, and it is clear that the totality of the circumstances supports a finding of duress in its true meaning.
In conclusion, I find no error in the trial court's instruction on duress as it is consistent with definition as contained in the statute at all times here relevant and therefore respectfully dissent.
NOTES
[1] Valentine was convicted of four counts of forcible oral copulation in violation of Penal Code section 288a in counts 2, 11, 13, and 16; eight counts of penetration by a foreign object in violation of Penal Code section 289, subdivision (a) in counts 3-10; one count of lewd act upon a child of 14 or 15 years of age in violation of Penal Code section 288, subdivision (c) in count 12; two counts of oral copulation of a person under 18 years of age in violation of Penal Code section 288a, subdivision (b)(1) in counts 14 and 17; two counts of penetration by a foreign object of a person under 18 years of age in violation of Penal Code section 289, subdivision (h) in counts 15 and 18; and four counts of lewd conduct with a child under 14 years of age in violation of Penal Code section 288, subdivision (a) in counts 19-22.

The jury was unable to reach a verdict on count 1, which was thereafter dismissed by the trial court.
[2] Penal Code section 289, subdivision (a) prior to 1998 amendment read in pertinent part: "... who causes the penetration, however slight, of the genital ... openings of any person ... for the purpose of sexual arousal, gratification, or abuse by any foreign object, substance, instrument, or device, or by any unknown object when the act is accomplished against the victim's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person or where the act is accomplished against the victim's will by threatening to retaliate in the future against the victim or any other person, and there is a reasonable possibility that the perpetrator will execute the threat ..."
[3] Penal Code section 288a, subdivision (c) prior to 1998 amendment read in pertinent part: "... who participates in an act of oral copulation with another person . . . when the act is accomplished against the victim's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person or where the act is accomplished against the victim's will by threatening to retaliate in the future against the victim or any other person, and there is a reasonable possibility that the perpetrator will execute the threat ..."
[4] The relevant portion of this legislation merely repeats the then existing language of sections 261 and 262, but with a "strikeout" line through the term "hardship." As a consequence a code provision which had read, "`duress' means a direct or implied threat of force, violence, danger, hardship, or retribution" now reads "`duress' means a direct or implied threat of force, violence, danger, or retribution." In effect, where the code had listed five basic types of duress, it now only lists four. As a result of this amendment a threat the defendant will impose some hardship on a victim if she refuses to consent to sex no longer qualifies as a grounds for conviction of forcible rape or spousal rape.
[5] In a petition for rehearing respondent urges the acts for which they are charging appellant occurred before the 1994 amendment striking "hardship" as one of the grounds for finding "duress." Respondent argues the Legislature did not expressly declare the 1994 amendment was retroactive in effect and thus appellant should be punished for forcible oral copulation and forcible digital penetration as to those earlier acts even under this court's conclusion the 1994 amendment changed the definition of "duress" for those other categories of sex crimes as well as for forcible rape. This argument ignores In re Estrada (1965) 63 Cal.2d 740, 48 Cal.Rptr. 172, 408 P.2d 948, and its progeny, including People v. Rossi (1976) 18 Cal.3d 295, 134 Cal.Rptr. 64, 555 P.2d 1313. In the latter case, the Supreme Court reversed a conviction for lewd conduct under 288a even though the Legislature amended the crime in defendant's favor after her conviction and while the case was on appeal. Here the Legislature redefined "duress" in appellant's favor several years before the prosecution even charged him with these offenses. If amendments redefining a crime while a case is on appeal bar conviction under the prior definition of criminal conduct, it is even more apparent they bar convictions under prosecutions first initiated several years later.

Respondent likewise expresses concern this interpretation will necessarily "open the floodgates" to thousands of convicted child molesters. This argument ignores this court's discussion of whether the instructional error was harmless, as it would be in most such prosecutions. In this case, however, we found the prosecutor had relied heavily, indeed virtually exclusively, on the "hardship" with which appellant threatened his victims in order to make the case for forcible oral copulation and forcible digital penetration.
[6] We conclude it cannot be said the evidence was insufficient as a matter of law to convict appellant of forcible oral copulation or forcible penetration by a foreign object under 288a and 289, subdivision (a) if the jury were to have received a definition of duress which deleted the term "hardship" and to hear a jury summation from the prosecutor which omitted this as a grounds for conviction. Accordingly, we deny appellant's requested remedy reducing some counts to lesser offenses and dismissing others entirely because the statute of limitations had expired on those lesser offenses. On remand, however, respondent may elect to request the trial court to reduce one or more of these counts to lesser offenses and impose the lesser penalties attaching to them.
[*] Assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.